OWENS ET AL. *v.* OKURE

No. 87–56.   Argued November 1, 1988—Decided January 10, 1989

*Peter H. Schiff*, Deputy Solicitor General of New York, argued the cause for petitioners. With him on the briefs were *Robert Abrams*, Attorney General, *O. Peter Sherwood*, Solicitor General, and *Charles R. Fraser*, Assistant Attorney General.

*Kenneth Kimerling* argued the cause for respondent. With him on the brief were *Arthur N. Eisenberg, John A. Powell, Steven Shapiro, Helen Hershkoff*, and *Joseph M. Brennan.**

JUSTICE MARSHALL delivered the opinion of the Court.

In *Wilson* v. *Garcia*, 471 U. S. 261 (1985), we held that courts entertaining claims brought under 42 U. S. C. § 1983 should borrow the state statute of limitations for personal injury actions. This case raises the question of what limitations period should apply to a § 1983 action where a State has one or more statutes of limitations for certain enumerated intentional torts, and a residual statute for all other personal injury actions. We hold that the residual or general personal injury statute of limitations applies.

---

*Briefs of *amici curiae* urging reversal were filed for the State of Nebraska et al. by *Robert M. Spire*, Attorney General of Nebraska, and *Mark D. Starr*, Assistant Attorney General, *Joseph B. Meyer*, Attorney General of Wyoming, *John Steven Clark*, Attorney General of Arkansas, *Robert H. Henry*, Attorney General of Oklahoma, and *David Lee*, Assistant Attorney General, *Roger A. Tellinghuisen*, Attorney General of South Dakota, *Donald J. Hanaway*, Attorney General of Wisconsin, *T. Travis Medlock*, Attorney General of South Carolina, *Robert T. Stephan*, Attorney General of Kansas, and *William L. Webster*, Attorney General of Missouri; and for the city of New York by *Peter L. Zimroth, Leonard J. Koerner, Edward F. X. Hart*, and *John P. Woods*.

## I

On November 13, 1985, respondent Tom U. U. Okure brought suit in the District Court for the Northern District of New York, seeking damages under § 1983 from petitioners Javan Owens and Daniel G. Lessard, two State University of New York (SUNY) police officers. Okure alleged that, on January 27, 1984, the officers unlawfully arrested him on the SUNY campus in Albany and charged him with disorderly conduct. The complaint stated that Okure was "forcibly transported" to a police detention center, "battered and beaten by [the police officers] and forced to endure great emotional distress, physical harm, and embarrassment." App. 5–6. As a result of the arrest and beating, Okure claimed, he "sustained personal injuries, including broken teeth and a sprained finger, mental anguish, shame, humiliation, legal expenses and the deprivation of his constitutional rights." *Id.*, at 6.

The officers moved to dismiss the complaint, which had been filed 22 months after the alleged incident, as time barred. They contended that § 1983 actions were governed by New York's 1-year statute of limitations covering eight intentional torts: "assault, battery, false imprisonment, malicious prosecution, libel, slander, false words causing special damages, [and] a violation of the right of privacy." N. Y. Civ. Prac. Law § 215(3) (McKinney 1972).

The District Court denied the motion to dismiss. 625 F. Supp. 1568 (1986). Borrowing "a narrowly drawn statute which is applicable only to certain intentional torts," *id.*, at 1570, the court stated, was inconsistent with this Court's endorsement of "a simple, broad characterization of all § 1983 claims." *Ibid.* (citing *Wilson, supra,* at 272). Moreover, a 1-year statute of limitations on § 1983 claims "would improperly restrict the scope of § 1983 and controvert federal policy." 625 F. Supp., at 1571. The court concluded

that New York's 3-year residual statute of limitations for claims of personal injury not embraced by specific statutes of limitations, N. Y. Civ. Prac. Law § 214(5) (McKinney Supp. 1988),[1] was applicable to § 1983 actions, and that Okure's complaint was therefore timely. The court then certified an interlocutory appeal on this question pursuant to 28 U. S. C. § 1292(b) (1982 ed., Supp. IV) and Rule 5(a) of the Federal Rules of Appellate Procedure.

The Court of Appeals for the Second Circuit granted permission for the appeal and affirmed. 816 F. 2d 45 (1987). It stated that *Wilson*'s description of § 1983 claims as general personal injury actions required a statute of limitations "expansive enough to accommodate the diverse personal injury torts that section 1983 has come to embrace." *Id.*, at 48. As between the two New York statutes of limitations, the court observed: "By nature, section 214(5) is general; section 215(3) is more specific and exceptional. This dichotomy survives no matter how many similar intentional torts are judicially added to those enumerated in section 215(3)." *Ibid.* The Court of Appeals favored § 214(5) for another reason: its 3-year period of limitations "more faithfully represents the federal interest in providing an effective remedy for violations of civil rights than does the restrictive one year limit." *Id.*, at 49. Injuries to personal rights are not "necessarily apparent to the victim at the time they are inflicted," the court explained, and "[e]ven where the injury itself is obvious, the constitutional dimensions of the tort may not be." *Id.*, at 48.

The dissent argued that § 1983 actions are best analogized to intentional torts, *id.*, at 51, and that, because § 215(3) governs "almost every intentional injury to the person," *id.*, at

---

[1] New York Civ. Prac. Law § 214 provides in relevant part:

"The following actions must be commenced within three years:

.                   .                   .                   .

"5. an action to recover damages for a personal injury except as provided in sections 214–b, 214–c and 215 . . . ."

50, it is more appropriate for § 1983 claims than § 214(5), which it contended had been confined primarily to negligence claims. *Ibid.* The dissent added that using § 215(3)'s 1-year limitations period is not "inherently inconsistent with the policies underlying the Civil Rights Act." *Id.*, at 54. We granted certiorari, 485 U. S. 958 (1988), and now affirm.

## II

### A

In this case, we again confront the consequences of Congress' failure to provide a specific statute of limitations to govern § 1983 actions. Title 42 U. S. C. § 1988 endorses the borrowing of state-law limitations provisions where doing so is consistent with federal law; § 1988 does not, however, offer any guidance as to which state provision to borrow.[2] To fill this void, for years we urged courts to select the state statute of limitations "most analogous," *Board of Regents, Univ. of New York* v. *Tomanio*, 446 U. S. 478, 488 (1980), and "most appropriate," *Johnson* v. *Railway Express Agency, Inc.*, 421 U. S. 454, 462 (1975), to the particular § 1983 action, so long as the chosen limitations period was consistent with federal law and policy. *Occidental Life Ins. Co. of California* v. *EEOC*, 432 U. S. 355, 367 (1977); *Johnson, supra*, at 465.

---

[2] In relevant part, § 1988 provides:

"The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this Title, and of Title 'CIVIL RIGHTS,' and of Title 'CRIMES,' for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause . . . ." 42 U. S. C. § 1988.

The practice of seeking state-law analogies for particular § 1983 claims bred confusion and inconsistency in the lower courts and generated time-consuming litigation. Some courts found analogies in common-law tort, others in contract law, and still others in statutory law.[3] Often the result had less to do with the general nature of § 1983 relief than with counsel's artful pleading and ability to persuade the court that the facts and legal theories of a particular § 1983 claim resembled a particular common-law or statutory cause of action. Consequently, plaintiffs and defendants often had no idea whether a federal civil rights claim was barred until a court ruled on their case. Predictability, a primary goal of statutes of limitations, was thereby frustrated.

In *Wilson*, we sought to end this "conflict, confusion and uncertainty." 471 U. S., at 266. Recognizing the problems inherent in the case-by-case approach, we determined that 42 U. S. C. § 1988 requires courts to borrow and apply to all § 1983 claims the one most analogous state statute of limitations. *Ibid.* See *id.*, at 275 ("[F]ederal interests in uniformity, certainty, and the minimization of unnecessary litigation all support the conclusion that Congress favored this simple approach"); see also *id.*, at 272 ("[A] simple, broad characterization of all § 1983 claims best fits the statute's remedial purpose"). We concluded, based upon the legislative history of § 1983 and the wide array of claims now embraced by that provision, that § 1983 "confer[s] a general remedy for injuries to personal rights." *Id.*, at 278. Because "§ 1983 claims are best characterized as personal injury actions," we held that a

---

[3] See Shapiro, Choosing the Appropriate State Statute of Limitations for Section 1983 Claims After *Wilson* v. *Garcia*: A Theory Applied to Maryland Law, 16 Balt. L. Rev. 242, 251–256 (1987) (describing different approaches to determining the appropriate statute of limitations for § 1983 actions); Note, Retroactive Application of *Wilson* v. *Garcia*: Continued Confusion to a Troubled Topic, 44 Wash. & Lee L. Rev. 135, 135, n. 4 (1987) (same); Comment, Statutes of Limitations in Federal Civil Rights Litigation, 1976 Ariz. S. L. J. 97, 116–126 (same).

State's personal injury statute of limitations should be applied to all § 1983 claims. *Id.*, at 280.

As the instant case indicates, *Wilson* has not completely eliminated the confusion over the appropriate limitations period for § 1983 claims. In States where one statute of limitations applies to all personal injury claims, *Wilson* supplies a clear answer. Courts considering § 1983 claims in States with multiple statutes of limitations for personal injury actions, however, have differed over how to determine which statute applies.[4] Several Courts of Appeals have held that the appropriate period is that which the State assigns to certain enumerated intentional torts. These courts have reasoned that intentional torts are most closely analogous to the claims Congress envisioned being brought under the Civil Rights Act, and to the paradigmatic claims brought today under § 1983.[5] Other Courts of Appeals, by contrast, have

---

[4] See *Preuit & Mauldin* v. *Jones*, 474 U. S. 1105, 1108 (1986) (WHITE, J., dissenting from denial of certiorari) ("[C]onflicting principles . . . have determined the statutes of limitations chosen for § 1983 actions in the Tenth Circuit on the one hand and the Fifth and Eleventh Circuits on the other"); *Wilson,* 471 U. S., at 286–287 (O'CONNOR, J., dissenting) (anticipating dilemma facing courts in States with more than one statute of limitations for personal injury claims).

[5] See, *e. g., Mulligan* v. *Hazard,* 777 F. 2d 340 (CA6 1985) (selecting Ohio statute of limitations for libel, slander, assault, battery, malicious prosecution, false imprisonment, and malpractice, and rejecting statute of limitations for bodily injury or for injury to the rights of the plaintiff not enumerated elsewhere), cert. denied, 476 U. S. 1174 (1986); *Gates* v. *Spinks,* 771 F. 2d 916 (CA5 1985) (selecting Mississippi statute of limitations for most intentional torts, and rejecting statute for causes of action not otherwise provided for), cert. denied, 475 U. S. 1065 (1986); *Jones* v. *Preuit & Mauldin,* 763 F. 2d 1250, 1254 (CA11 1985) (selecting Alabama statute of limitations for actions for " 'any trespass to person or liberty, such as false imprisonment or assault and battery,' " and rejecting statute for " 'any injury to the person or rights of another not arising from contract and not specifically enumerated in this section' "), cert. denied, 474 U. S. 1105 (1986). The Fifth and Sixth Circuits, however, on several occasions have departed from this approach. See, *e. g., Kline* v. *North Texas State Univ.,* 782 F. 2d 1229 (CA5 1986) (selecting Texas statute of limitations for

endorsed the use of the state residuary statute of limitations for § 1983 actions. These courts have observed that § 1983 embraces a broad array of actions for injury to personal rights, and that the intentional tort is therefore too narrow an analogy to a § 1983 claim.[6] The Court of Appeals for the Second Circuit followed this second approach when it concluded that New York's statute of limitations for certain enumerated intentional torts did not reflect the diversity of § 1983 claims.

## B

In choosing between the two alternatives endorsed by the Courts of Appeals—the intentional torts approach and the general or residual personal injury approach—we are mindful that ours is essentially a practical inquiry. *Wilson,* 471 U. S., at 272. Our decision in *Wilson* that one "simple broad characterization" of all § 1983 actions was appropriate under § 1988 was, after all, grounded in the realization that the po-

---

injury done to the person of another); *Carroll* v. *Wilkerson,* 782 F. 2d 44, 45 (CA6) *(per curiam)* (selecting Michigan general personal injury statute of limitations), cert. denied *sub nom. County of Wayne* v. *Wilkerson,* 479 U. S. 923 (1986).

[6] See, *e. g., Meade* v. *Grubbs,* 841 F. 2d 1512, 1523–1524, and 1524, n. 11 (CA10 1988) (selecting Oklahoma statute of limitations for " 'injury to the rights of another, not arising on contract and not hereinafter enumerated,' " and rejecting statute for assault or battery); *Banks* v. *Chesapeake & Potomac Tel. Co.,* 256 U. S. App. D. C. 22, 33, 802 F. 2d 1416, 1427 (1986) (stating in dicta that it "might well" apply District of Columbia statute of limitations for claims not otherwise provided for and rejecting statute for libel, slander, assault, battery, mayhem, wounding, malicious prosecution, false arrest, or false imprisonment); *Small* v. *Inhabitants of Belfast,* 796 F. 2d 544, 546–547 (CA1 1986) (selecting Maine's statute of limitations for " '[a]ll civil actions . . . except as otherwise specifically provided,' " and rejecting statute for assault and battery, false imprisonment, slander, libel, and medical malpractice); *McKay* v. *Hammock,* 730 F. 2d 1367, 1370 (CA10 1984) (en banc) (selecting Colorado statute of limitations for " '[a]ll other actions of every kind for which no other period of limitation is provided by law,' " and rejecting statutes for trespass and trespass on the case).

tential applicability of different state statutes of limitations had bred chaos and uncertainty. *Id.*, at 275; see also *Burnett* v. *Grattan*, 468 U. S. 42, 50 (1984) (courts selecting a state statute of limitations for § 1983 actions must "tak[e] into account practicalities that are involved in litigating federal civil rights claims"); accord, *Felder* v. *Casey*, 487 U. S. 131 (1988). Thus, our task today is to provide courts with a rule for determining the appropriate personal injury limitations statute that can be applied with ease and predictability in all 50 States.

A rule endorsing the choice of the state statute of limitations for intentional torts would be manifestly inappropriate. Every State has multiple intentional tort limitations provisions, carving up the universe of intentional torts into different configurations. In New York, for example, § 215(3), the intentional tort statute endorsed by petitioners, covers eight enumerated torts. See *supra*, at 237. But different provisions cover other specified intentional torts. Malpractice actions are governed by one provision; certain veterans' claims, by another.[7] In Michigan, separate statutes of limitations govern "assault, battery, or false imprisonment," Mich. Comp. Laws § 600.5805(2) (1979), "malicious prosecution,"

---

[7] See N. Y. Civ. Prac. Law § 214(6) (McKinney Supp. 1988) (3-year statute of limitations covers all malpractice claims not provided for in § 214–a); § 214–a (2½-year statute of limitations for all medical, dental, and podiatric malpractice torts); § 214–b (2-year statute of limitations for Vietnam veterans' claims of exposure to phenoxy herbicides, commonly known as Agent Orange). Thus, it is irrelevant that courts have construed § 215(3) to provide the appropriate limitations period for a few intentional torts that are not enumerated in that statute, see, *e. g.*, *Koster* v. *Chase Manhattan Bank*, 609 F. Supp. 1191, 1198 (SDNY 1985) (construing § 215(3) to cover intentional infliction of emotional distress); *Rio* v. *Presbyterian Hospital in City of New York*, 561 F. Supp. 325, 328 (SDNY 1983) (construing § 215(3) to cover intentional interference with contractual relations); *Hansen* v. *Petrone*, 124 App. Div. 2d 782, 508 N. Y. S. 2d 500 (1986) (mem.) (construing § 215(3) to cover abuse of process and intentional infliction of emotional distress); accord, 2 Carmody-Wait 2d § 13.74 (1965); 35 N. Y. Jur., Limitations and Laches § 35, pp. 527–528 (1964).

§ 600.5805(3), "libel or slander," § 600.5805(7), and "all other actions to recover damages for the death of a person or for injury to a person . . . ," § 600.5805(8). In Ohio, separate provisions govern "bodily injury," Ohio Rev. Code Ann. § 2305.10 (Supp. 1987), "libel, slander, malicious prosecution, or false imprisonment," § 2305.11, and "assault or battery," § 2305.111. Similarly, in Pennsylvania, separate provisions govern "libel, slander or invasion of privacy," 42 Pa. Cons. Stat. § 5523(1) (1988), "assault, battery, false imprisonment, false arrest, malicious prosecution or malicious abuse of process," § 5524(1), "injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another," § 5524(2), and "[a]ny other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct." § 5524(7). Were we to call upon courts to apply the state statute of limitations governing intentional torts, we would succeed only in transferring the present confusion over the choice among multiple personal injury provisions to a choice among multiple intentional tort provisions.[8]

---

[8] The following nonexhaustive list illustrates the frequency with which States have enacted multiple statutes of limitations governing intentional torts. See, e. g., Ala. Code §§ 6–2–34 (1) (1977) (six years "for any trespass to person or liberty, such as false imprisonment or assault and battery"); Ala. Code §§ 6–2–38 (h), (i), (k), (l) (Supp. 1987) (two years for malicious prosecution, libel or slander, seduction, or any injury to the person, or rights of another not arising from contract and not specifically enumerated); Alaska Stat. Ann. § 09.10.070 (1983) (two years for libel, slander, assault, battery, seduction, false imprisonment); § 09.10.055 (six years for injuries resulting from construction-related torts); Ariz. Rev. Stat. Ann. § 12–541 (1982) (one year for malicious prosecution, false imprisonment, or injuries done to character or reputation of another by libel or slander, seduction); Ariz. Rev. Stat. Ann. § 12–542(2) (Supp. 1988) (two years for "injuries done to the person of another"); Ariz. Rev. Stat. Ann. § 12–551 (1982) (two years for injuries resulting from product liability); Ark. Code Ann. § 16–56–104 (1987) (one year for special actions on the case, criminal conversation, alienation of affection, assault and battery, false imprison-

In marked contrast to the multiplicity of state intentional tort statutes of limitations, every State has one general or residual statute of limitations governing personal injury ac-

ment, slander, libel with special damages); § 16–56–105 (three years for libel); § 16–56–106 (18 months for medical malpractice); § 16–56–112(b)(2) (five years for injuries resulting from construction-related torts); Cal. Civ. Proc. Code Ann. § 340 (West Supp. 1988) (one year for libel, slander, assault, battery, false imprisonment, seduction, injury, or death from wrongful act or neglect); § 340.1 (three years for actions based on incestuous relationship with a minor); Cal. Civ. Proc. Code Ann. § 340.2 (West 1982) (one year for asbestos-related torts); § 340.5 (three years for medical malpractice); § 340.6 (one year for attorney malpractice); Cal. Civ. Code Ann. § 29 (West 1982) (six years for injuries to "[a] child conceived, but not yet born"); Colo. Rev. Stat. § 13–80–102(a) (1987) (two years for "[t]ort actions, including but not limited to actions for negligence, trespass, malicious abuse of process, malicious prosecution, outrageous conduct, interference with relationships"); Colo. Rev. Stat. § 13–80–102.5 (Supp. 1988) (two years for medical malpractice); Colo. Rev. Stat. § 13–80–103(a) (1987) (one year for assault, battery, false imprisonment, false arrest, libel, slander); D. C. Code § 12–301(4) (1981) (one year for libel, slander, assault, battery, false imprisonment, mayhem, wounding, malicious prosecution, false arrest); § 12–301(8) (three years for actions not otherwise prescribed); Fla. Stat. § 95.11(3)(o) (1987) (four years for assault, battery, false arrest, malicious prosecution, malicious interference, false imprisonment, or any other intentional tort, except as provided elsewhere); § 95.11(3)(p) (four years for actions not specifically provided for); § 95.11(4)(b) (two years for medical and professional malpractice and wrongful death); Ga. Code Ann. § 9–3–33 (1982) (one year for injury to reputation; two years for injury to the person; four years for injury to the person involving a loss of consortium); Haw. Rev. Stat. § 657–4 (1985) (two years for libel or slander); Haw. Rev. Stat. § 657–7.3 (Supp. 1987) (two to six years for medical torts depending on time of discovery of the injury); Ill. Rev. Stat., ch. 110, ¶ 13–201 (1984) (one year for libel, slander, or publication of matter violating right of privacy); ¶ 13–202 (two years for false imprisonment, malicious prosecution, abduction, or seduction, criminal conversation); Kan. Stat. Ann. § 60–513(a)(4) (Supp. 1987) (two years for "injury to the rights of another, not arising on contract, and not herein enumerated"); Kan. Stat. Ann. § 60–514 (1983) (one year for libel, slander, assault, battery, malicious prosecution, or false imprisonment); Ky. Rev. Stat. Ann. § 413.120(6) (Baldwin 1988) (five years for "injury to the rights of the plaintiff, not arising on contract and not otherwise enumerated"); § 413.135 (five years for injury resulting from con-

tions. Some States have a general provision which applies to all personal injury actions with certain specific exceptions.[9] Others have a residual provision which applies to all

struction of improvements to real estate); §§ 413.140(1)(d)–(e) (one year for libel, slander, and malpractice); Me. Rev. Stat. Ann., Tit. 14, § 752 (1980) (six years for civil actions except as otherwise specifically provided); § 752(A) (four years for malpractice by design professionals); § 752(B) (two years for injuries suffered during "participation in skiing or hang-gliding or the use of a tramway associated with skiing or hang-gliding"); Me. Rev. Stat. Ann., Tit. 14, § 752–C (Supp. 1988) (six years for actions based on sexual act with a minor); § 753 (two years for assault and battery, false imprisonment, slander, libel); Md. Cts. & Jud. Proc. Code Ann. § 5–101 (1984) (three years for all civil actions); § 5–105 (one year for assault, battery, libel, slander); § 5–108 (20 years for injury to person occurring after improvement to realty); Md. Cts. & Jud. Proc. Code Ann. § 5–109 (Supp. 1988) (five years for medical torts); Mass. Gen. Laws § 260:2A (1986) (three years for tort actions except as otherwise provided for); § 260:4 (three years for assault, battery, false imprisonment, slander, libel, and malpractice); Mo. Rev. Stat. § 516.120(1) (1986) (five years for all liabilities "except where a different time is herein limited"); § 516.140 (two years for libel, slander, assault, battery, false imprisonment, criminal conversation, and malicious prosecution); Neb. Rev. Stat. § 25–207(3) (1985) (four years for "injury to the rights of the plaintiff, not arising on contract, and not hereinafter enumerated"); § 25–208 (one year for libel, slander, assault and battery, false imprisonment, and malicious prosecution); Nev. Rev. Stat. § 11.190(4)(c) (1987) (two years for libel, slander, assault, battery, false imprisonment, and seduction); § 11.190(4)(e) (two years for injuries to or death of a person caused by the wrongful act or neglect of another); N. J. Stat. Ann. § 2A:14–1 (West 1987) (six years for any tortious injury to the rights of another not stated elsewhere); § 2A:14–2 (two years for injury to the person caused by the wrongful act, neglect, or default of any person); § 2A:14–3 (one year for libel or slander); N. C. Gen. Stat. § 1–52(5) (1988) (three years for "any other injury to the person or rights of another, not arising on contract and not hereafter enumerated"); § 1–54 (one year for libel, slander, assault, battery, or false imprisonment); N. D. Cent. Code § 28–01–16(5) (Supp. 1987) (six years for injury to the person or rights of another not arising under contract, when not otherwise expressly provided); N. D. Cent. Code § 28–01–18(1) (1974) (one year for libel, slander, assault, battery, or false imprisonment); N. D. Cent. Code § 28–01–18(4) (Supp. 1987) (two years for injuries done to the person of another, when

actions not specifically provided for, including personal injury actions.[10] Whichever form they take, these provisions are easily identifiable by language or application. Indeed, the

death ensues); Okla. Stat., Tit. 12, § 95 (Third) (1981) (two years "for injury to the rights of another, not arising on contract, and not hereinafter enumerated"); § 95 (Fourth) (one year for libel, slander, assault, battery, malicious prosecution, or false imprisonment); R. I. Gen. Laws § 9–1–14(a) (1985) (one year for slander); § 9–1–14(b) (three years for injuries to the person); R. I. Gen. Laws § 9–1–14.1 (Supp. 1988) (three years for malpractice); R. I. Gen. Laws § 9–1–14.2 (1985) (three years for Agent Orange-related torts); S. C. Code § 15–3–530(5) (Supp. 1987) (six years for criminal conversation or "for any other injury to the person or rights of another, not arising on contract, not hereinafter enumerated"); S. C. Code § 15–3–550(1) (1977) (two years for libel, slander, assault, battery, or false imprisonment); S. D. Codified Laws § 15–2–13(5) (1984) (six years for "criminal conversation or for any other injury to the rights of another not arising on contract and not otherwise specifically enumerated"); § 15–2–14.1 (two years for medical malpractice); § 15–2–15(1) (two years for libel, slander, assault, battery, or false imprisonment); Tex. Civ. Prac. & Rem. Code Ann. § 16.002 (1980) (one year for malicious prosecution, libel, slander, or breach of promise of marriage); § 16.003 (two years for "personal injury"); Utah Code Ann. § 78–12–25(3) (Supp. 1988) (four years for "action for relief not otherwise provided for by law"); Utah Code Ann. § 78–12–28(2) (1987) (two years for death caused by wrongful act or neglect); Utah Code Ann. § 78–12–29(4) (Supp. 1988) (one year for libel, slander, assault, battery, false imprisonment, or seduction); Va. Code § 8.01–243A (Supp. 1988) (two years for personal injuries unless otherwise provided for); Va. Code § 8.01–244 (1984) (two years for wrongful death); § 8.01–248 (one year for "personal action, for which no limitation is otherwise prescribed"); Wash. Rev. Code § 4.16.080(2) (1987) (three years "for injury to the person or rights of another not hereinafter enumerated"); § 4.16.100(1) (two years for libel, slander, assault, assault and battery, or false imprisonment); Wash. Rev. Code § 4.16.340 (Supp. 1988) (three years for intentional conduct brought by any person for recovery of damages for injury suffered as a result of childhood sexual abuse); § 4.16.350 (three years for torts involving medical malpractice); Wis. Stat. § 893.54 (1985–1986) (three years for injuries to the person); § 893.55 (three years for medical malpractice); § 893.57 (two years for libel, slander, assault, battery, false imprisonment, or "other intentional tort"); § 893.585 (three years for sexual exploitation by a therapist); Wis. Stat. § 893.587 (Supp. 1988) (three years for incest-related

very idea of a general or residual statute suggests that each State would have no more than one. Potential § 1983 plaintiffs and defendants therefore can readily ascertain, with little risk of confusion or unpredictability, the applicable limitations period in advance of filing a § 1983 action.

Petitioners' argument that courts should borrow the intentional tort limitations periods because intentional torts are most analogous to § 1983 claims fails to recognize the enormous practical disadvantages of such a selection. Moreover, this analogy is too imprecise to justify such a result. In *Wilson*, we expressly rejected the practice of drawing narrow analogies between § 1983 claims and state causes of action. 471 U. S., at 272. We explained that the Civil Rights Acts provided

> "[a] unique remedy mak[ing] it appropriate to accord the statute 'a sweep as broad as its language.' Because the § 1983 remedy is one that can 'override certain kinds of state laws,' *Monroe* v. *Pape*, 365 U. S. 167, 173 (1961), and is, in all events, 'supplementary to any remedy any State might have,' *McNeese* v. *Board of Education*, 373 U. S. 668, 672 (1963), it can have no precise counterpart in state law. *Monroe* v. *Pape*, 365 U. S., at 196, n. 5 (Harlan, J., concurring). Therefore, it is 'the purest coincidence,' *ibid.*, when state statutes or the common law provide for equivalent remedies; any analogies to those

torts); Wyo. Stat. § 1–3–105(a)(iv)(C) (1988) (four years for "injury to the rights of the plaintiff, not arising on contract and not herein enumerated"); § 1–3–105(a)(v) (one year for libel, slander, assault, battery, malicious prosecution, and false imprisonment).

[9] See, *e. g.*, Ala. Code § 6–2–38(l) (Supp. 1988) ("[A]ny injury to the person or rights of another not arising from contract and not specifically enumerated"); N. C. Gen. Stat. § 1–52(5) (1988) ("[A]ny other injury to the person or rights of another, not arising on contract and not hereafter enumerated").

[10] See, *e. g.*, D. C. Code § 12–301(8) (1981) (actions not otherwise prescribed); Colo. Rev. Stat. § 13–80–102(i) (1987) ("All other actions of every kind for which no other period of limitation is provided").

causes of action are bound to be imperfect." *Ibid.* (footnotes omitted).

The intentional tort analogy is particularly inapposite in light of the wide spectrum of claims which § 1983 has come to span. In *Wilson,* we noted that claims brought under § 1983 include

> "discrimination in public employment on the basis of race or the exercise of First Amendment rights, discharge or demotion without procedural due process, mistreatment of schoolchildren, deliberate indifference to the medical needs of prison inmates, the seizure of chattels without advance notice or sufficient opportunity to be heard." *Id.,* at 273 (footnotes omitted).

See also *id.,* at 273, n. 31; Blackmun, Section 1983 and Federal Protection of Individual Rights—Will the Statute Remain Alive or Fade Away?, 60 N. Y. U. L. Rev. 1, 19–20 (1985). Many of these claims bear little if any resemblance to the common-law intentional tort. See *Felder* v. *Casey,* 487 U. S., at 146, n. 3. Even where intent is an element of a constitutional claim or defense, the necessary intent is often different from the intent requirement of a related common-law tort. *E. g., Hustler Magazine* v. *Falwell,* 485 U. S. 46, 53 (1988) (distinguishing constitutional "malice" in the First Amendment context from common-law "malice"). Given that so many claims brought under § 1983 have no precise state-law analog, applying the statute of limitations for the limited category of intentional torts would be inconsistent with § 1983's broad scope.[11] We accordingly hold that where

---

[11] The analogy to intentional torts also reflects a profound misunderstanding of § 1983's history. Section 1983 was the product of congressional concern about the Ku Klux Klan-sponsored campaign of violence and deception in the South, which was "denying decent citizens their civil and political rights." *Wilson,* 471 U. S., at 276; see also *Briscoe* v. *LaHue,* 460 U. S. 325, 336–340 (1983). Although these violent acts often resembled the torts of assault, battery, false imprisonment, and misrepresentation,

state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions.[12]

§ 1983 was not directed at the perpetrators of these deeds as much as at the state officials who tolerated and condoned them.

"While one main scourge of the evil—perhaps the leading one—was the Ku Klux Klan, the remedy created [§ 1983] was not a remedy against it or its members but against those who representing a State in some capacity were *unable* or *unwilling* to enforce a state law." *Monroe* v. *Pape*, 365 U. S. 167, 175–176 (1961) (emphasis in original; footnote omitted).

See also *Wilson, supra,* at 276; *Parratt* v. *Taylor*, 451 U. S. 527, 534 (1981) ("Nothing in the language of § 1983 or its legislative history limits the statute solely to intentional deprivations of constitutional rights").

The intentional tort analogy also inadequately reflects the state of tort law at the time the Civil Rights Act was enacted. Almost all States had two types of personal injury claims: trespass and trespass or action on the case. J. K. Angell, Limitations of Actions at Law 13–14, 311–319 (1869); H. F. Buswell, Statute of Limitations and Adverse Possession 307–308 (1889). Trespass claims covered direct injury and action on the case indirect injury. W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton, Law of Torts 29–30 (5th ed. 1984). The paradigmatic § 1983 claim in 1871 involved a victim of violence or harassment who sued state officials for failing to prevent the harm; involving indirect injury, it would have been covered by the action on the case doctrine, including the relevant statute of limitations. Because most States have replaced action on the case with the general personal injury or residual provisions, and trespass with specialized intentional tort provisions, history supports the application of the former to § 1983 claims.

[12] Our decision today is fully consistent with *Wilson*'s rejection of a state residual, or "catchall," limitations provision as the appropriate one for § 1983 actions. 471 U. S., at 278. In *Wilson*, we rejected recourse to such provisions in the first instance, a position we continue to embrace. Courts should resort to residual statutes of limitations only where state law provides multiple statutes of limitations for personal injury actions and the residual one embraces, either explicitly or by judicial construction, unspecified personal injury actions. See, *e. g., Small* v. *Inhabitants of Belfast*, 796 F. 2d 544 (CA1 1986) (construing Maine's catchall statute as the general personal injury provision); *Alley* v. *Dodge Hotel*, 163 U. S. App. D. C. 320, 501 F. 2d 880 (1974) *(per curiam)* (construing District of Columbia's catchall statute as the general personal injury provision).

## III

The Court of Appeals therefore correctly applied New York's 3-year statute of limitations governing general personal injury actions to respondent Okure's claim.[13]   Our decision in *Wilson* promised an end to the confusion over what statute of limitations to apply to § 1983 actions; with today's decision, we hope to fulfill *Wilson*'s promise.   Accordingly, the judgment of the Court of Appeals is

*Affirmed.*

---

[13] Because we hold that the Court of Appeals correctly borrowed New York's 3-year general personal injury statute of limitations, we need not address Okure's argument that applying a 1-year limitations period to § 1983 actions would be inconsistent with federal interests.   See *Burnett* v. *Grattan*, 468 U. S. 42, 61 (1984) (REHNQUIST, J., dissenting) (before borrowing a state statute of limitations and applying it to § 1983 claims, a court must ensure that it "afford[s] a reasonable time to the federal claimant").