**HERBIL HOLDING CO., Plaintiff,**

v.

**Douglas BROOK, Kathleen Brook, South Island Orthopedic Group, P.C., United States of America, Trilliam Corp., Nor–Le Realty Co., John Doe, and Jane Doe, Defendants.**

**Douglas Brook and Kathleen Brook, Third-party Plaintiffs,**

v.

**State of New York, Nassau County, Town of Hempstead, Incorporated Village of Freeport, Nassau County Republican Committee, and Freeport Republican Club, Third-party Defendants.**

**No. 97–CV–6716.**

United States District Court, E.D. New York.

Feb. 14, 2000.

---

Cohn, Rosenthal & Avrutine, Baldwin, NY (Susan G. Berlly, of counsel), for Plaintiff Herbil Holding Co.

Douglas Brook, Kathleen Brook, Freeport, NY, Defendants/ Third-Party Plaintiffs pro se.

United States Attorney's Office, Brooklyn, NY by Thomas McFarland, Assistant U.S. Attorney, for Defendant U.S.

Dennis Vacco, New York State Attorney General, New York City by Elizabeth A. Forman, Assistant Attorney General, for Third-Party Defendant State of New York.

Nassau County Attorney's Office, Mineola, NY by Jeanette M. Ostaseski, Deputy County Attorney.

Ronald J. Levinson, Hempstead Town Attorney, Hempstead, NY, for Third-Party Defendant Town of Hempstead.

Howard Eric Colton, Freeport, NY, for Third-Party Defendant Incorporated Village of Freeport.

Kwiatkowski & Ryan, LLP, Floral Park, NY (John Ryan, of counsel), for Third-party Defendants Nassau County Republican Committee and Freeport Republican Club.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

Plaintiff Herbil Holding Co. commenced this action in Supreme Court, Nassau County, against Defendants Douglas and Kathleen Brooks ("the Brooks") to foreclose on a tax lien on the Brooks' home at 29 Coolidge Place, Freeport N.Y., and against other Defendants who had purchased part of an interest in the property at a tax sale. On or about February 26,

1998, the Brooks removed the case to federal court and interposed a *pro se* third-party complaint against the third-party Defendants, "for their continued unlawful agreement to breach their fiduciary duties to conceal, interfere and obstruct with plaintiff's causes of action" and for violating the Brooks' constitutional rights. The third-party Defendants now move to dismiss the Brooks' third-party complaint under the provisions of Fed.R.Civ.P. 12(b)(6).

## BACKGROUND

The *pro se* third-party complaint is short of meaningful factual allegations, but a review of the papers before the Court allows some reconstruction of the operative facts.

Until 1981, Douglas Brooks ("Douglas") was employed as an Assistant Power Plant Operator by the Incorporated Village of Freeport. Through circumstances that are unclear, Douglas applied for disability retirement in approximately July of 1981. In August of 1982, through an attorney, Douglas filed an Article 78 proceeding in Supreme Court, Nassau County, alleging that his retirement was coerced by the Village in retaliation for his complaints on numerous occasions that he was performing work "out of title." In an oral decision issued on July 26, 1983, Justice Jeffrey Stark denied Douglas' petition. The answer by the Brooks to the original complaint in this case characterizes Justice Stark's decision as "unlawfully entered," although they do not specify any basis for that statement.

Douglas Brook filed a second lawsuit with regard to his termination, this time in federal court in 1985. In this lawsuit, Douglas claimed, among other things, malicious prosecution, negligence, misconduct by the Village attorney and Justice Stark in the Article 78 proceeding, violation of the Village's collective bargaining agreement, and unfair labor practices under federal and state labor laws. On January 13, 1986, Circuit Judge Frank X. Altimari, sitting by designation, dismissed Douglas'

complaint on the grounds of *res judicata* and collateral estoppel arising from the Article 78 proceeding, but retained jurisdiction over the breach of the collective bargaining agreement claim. A January 5, 1989 decision by United States Magistrate Judge David Jordan eventually dismissed the remaining claim, finding that Douglas had not been deprived of any rightful pay.

At some point in March 1984, the Village of Freeport sought to fill the position of Power Plant Operator. A civil service examination was given for the position, and the eligibility list provided by the Nassau County Civil Service Commission ranked Douglas as third. On April 23, 1984, the Freeport Village Board transferred two individuals, George Bell and Robert Kortright, from their positions as Assistant Power Plant Operators with the Village to Power Plant Operators. Douglas took a second civil service test for the position of Power Plant Operator in 1987, ranking first among the candidates. Although Douglas' papers fail to indicate how, a 1991 report by the Village to the State indicates that between 1987 and 1991, several individuals scoring lower than him on the 1987 test were hired as Power Plant Operators.

Sometime in 1987, Nassau County apparently held a tax sale of the Brooks residence at 29 Coolidge Place, Freeport, N.Y. for unpaid school taxes in the amount of $1,500. Plaintiff Herbil Holding Co. paid the taxes due on the property and, in April 1988, was issued a tax sale certificate by Nassau County in that amount. In 1988, Herbil Holding Co. paid an additional $1,602 in school taxes on the property. Herbil Holding Co. then issued notices to redeem to the Brooks, but no response was received. On October 14, 1997, Herbil Holding commenced the instant action to foreclose on its tax lien as against the Brooks; Defendant South Island Orthopedic Group, a judgment creditor of the Brooks; Defendant United States Government, holder of a tax lien against the Brooks in the amount of $4,038; Defendants Trilliam. Corp. and Nor–Le Realty

Co., identified as "tax sale buyers"; and Defendants John and Jane Doe, the unknown tenants of the premises. The Brooks answered, interposing a counterclaim against Herbil Holding Co. reciting the facts described above, and claiming $700,000 in damages for "plaintiff's part in the unlawful agreement to conceal the defendants 'Brooks' rights in regard to reinstatement to his former government job to protect his family and property" and $500,-000,000 in punitive damages for the same conduct.

On November 17, 1997, the Brooks removed the case to this Court, presumably on federal question grounds. On February 6, 1998, the Brooks filed the third-party complaint at issue. Read in the light most favorable to the Brooks, the third-party complaint alleges a cause of action against the third-party Defendants for conspiring to violate the Brooks' first amendment rights, alleging that the third-party Defendants had engaged in a conspiracy to retaliate against the Brooks for their exercise of their First Amendment rights in violation of 42 U.S.C. § 1983. Although the caption does not reflect them, the body of the third-party complaint also names numerous elected and appointed officials of the third-part Defendant entities in their official and individual capacities. The Brooks seek $2,000,000 in compensatory damages and reinstatement for Douglas to his position with the Village,. with backpay and interest to 1981.

Each of the third-party Defendants has moved to dismiss the case for failure to state a claim under Rule 12(b)(6). The Village of Freeport has also moved to dismiss based on improper service, statute of limitations, res judicata, and collateral estoppel.

### DISCUSSION

In ruling on a motion under Fed. R.Civ.P. 12(b), the court is to look only to the allegations of the complaint and any documents attached to or incorporated by reference in the complaint, *Newman &*

*Schwartz v. Asplundh Tree Expert Co.,* 102 F.3d 660, 662 (2d Cir.1996); to assume all well-pleaded factual allegations to be true; and to view all reasonable inferences that can be drawn from such allegations and documents in the light most favorable to the plaintiff. *Dangler v. New York City Off Track Betting Corp.,* 193 F.3d 130, 1999 WL 742403 (2d Cir.1999). Where, as here, the plaintiff proceeds *pro se,* the court holds the pleadings to a less stringent standard than a formal pleading drafted by a lawyer, *Boddie v. Schnieder,* 105 F.3d 857, 860 (2d Cir.1997); *Sykes v. James,* 13 F.3d 515 (2d Cir.1993), but must dismiss the complaint where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Posr v. Court Officer Shield # 207,* 180 F.3d 409, 413 (2d Cir.1999) *citing Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

Read in the broadest possible light, the Brooks' third-part complaint appears to allege that the third-party Defendants have conspired to retaliate against Douglas to deny him employment, either for his complaints prior to 1981 about being forced to work "out of title," or subsequently for his pursuit of two lawsuits seeking to recover his job. This retaliation, the Brooks allege, violates their First Amendment rights and Section 1983. A plaintiff making a First Amendment retaliation claim under Section 1983 must initially demonstrate by a preponderance of the evidence that: (i) his speech was constitutionally protected, (ii) he suffered an adverse employment decision, and (iii) a causal connection exists between his speech and the adverse employment determination against him, so that it can be said that his speech was a motivating factor in the determination. *Morris v. Lindau,* 196 F.3d 102, 109 (2d Cir.1999). A claim invoking the right to petition the government for a redress of grievances is generally subject to the same constitutional analysis. *Wayte v. U.S.,* 470 U.S. 598, 610

n. 11, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985).

██ The First Amendment's guarantee of freedom of speech protects government employees from termination because of their speech on matters of public concern. *Board of County Commissioners v. Umbehr*, 518 U.S. 668, 674, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996). However, the First Amendment provides no protection to an employee who speaks out merely on matters of his own employment, and not on issues of political, social, or other concern to the community. *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Complaints of a personal nature that merely involve the employee's own interests, such as a claim of entitlement to a particular work assignment or a demand for different work assignments, are not protected. *Id.; White Plains Towing Corp. v. Patterson*, 991 F.2d 1049 (2d Cir.1993).

██ Here, all of Douglas Brooks' complaints involved matters of his own particular interest, not matters of public concern. For example, in the affidavit submitted by Douglas as part of the Article 78 proceeding, he claims "when your petitioner made requests for increases in pay pursuant to the contract with the respondent for out of title work, it was at that point that harassment, duress and threats were placed against the petitioner." Clearly, in the Article 78 proceeding, Douglas was seeking to remedy grievances relating to his individual employment situation, not to draw attention to issues of interest to the community. Even if Douglas was correct and the Village had been unlawfully requiring employees to work outside their Civil Service classifications without additional compensation, the fact that his complaint was focused solely on his personal employment situation renders his speech unprotected. *See Saulpaugh v. Monroe Community Hospital*, 4 F.3d 134, 143 (2d Cir.1993) (original complaint concerning employee's personal situation that,

upon investigation, reveals pattern of unlawful activity by employer is not considered speech of public concern). The subsequent actions by Douglas—commencement of the federal lawsuit, sitting for the Civil Service exams, and his other activities—are also efforts by him to secure money or employment for himself, not to spark a public debate on issues involving the Village's employment policies.

Therefore, the Court finds that, reading the pleadings in the light most favorable to the Brooks and drawing all reasonable inferences in their favor, they fail to state a claim for conspiracy or retaliation under Section 1983. The third-party Defendants' motions dismissing the third-party complaint are therefore granted.

██ In any event, even if the Brooks could state a claim for relief, the Court would nevertheless dismiss the third-party complaint on the grounds of timeliness. Claims under Section 1983 are governed by a three-year statute of limitations in New York. *Owens v. Okure*, 488 U.S. 235, 249–51, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989); *Soto v. Brooklyn Correctional Facility*, 80 F.3d 34, 35 (2d Cir.1996). Here, the latest possible incident of retaliation alleged by the Brooks is the hiring of two Power Plant Operators while he was at the top of the Civil Service eligibility list sometime prior to 1991. The Brooks' third-party complaint was filed in February 1998, or more than six years after the latest possible date that the Brooks' cause of action could have accrued. Therefore, even a viable claim under Section 1983 would be barred by the statute of limitations.

This Court finds that the Brooks fail to state any cognizable claim for relief under Section 1983, and therefore there are no federal questions that remain to be decided in this case. This Court lacks subject matter jurisdiction over the remaining issues, 28 U.S.C. § 1331, and at this relatively early stage, the case is remanded

**374**

back to the Supreme Court, Nassau County, for further proceedings on the original action. 28 U.S.C. § 1447(c).

### CONCLUSION

For the foregoing reason, the motions by third-party Defendants State of New York, County of Nassau, Town of Hempstead, Village of Freeport, Nassau County Republican Commission, and Freeport Republican Club to dismiss the third-party complaint are GRANTED, and the third-party complaint is dismissed in its entirety. The case is REMANDED to the Supreme Court, Nassau County for further proceedings on the original action. The Clerk of the Court is directed to close this case.

**SO ORDERED**