Michael **BOYD**

v.

**RHODE ISLAND DEPARTMENT OF CORRECTIONS, et al.**

No. C.A. 00–86T.

United States District Court,
D. Rhode Island.

June 25, 2001.

Report and Recommendation adopted by the District Court July 20, 2001.

Michael Boyd, pro se.

Jay M. Elias, Providence, WA, Rebecca N. Warr, Riverside, RI, for defendants.

### Report and Recommendation*

HAGOPIAN, United States Magistrate Judge.

Plaintiff Michael Boyd, incarcerated at the Adult Correctional Institution ("ACI"), in Cranston, Rhode Island, has filed an Amended Complaint pursuant to 42 U.S.C. § 1983 alleging a violation of his federal constitutional rights. He names as defendants various employees and officials at the ACI. Currently before the Court are the motions of defendants Dr. Anne Spaulding and Dr. Timothy Flannigan to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff has objected to Dr. Spaulding's motion, but not to Dr. Flannigan's.

This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) for a report and recommendation. For the reasons that follow, I recommend that Dr. Flannigan's motion to dismiss be granted, and Dr. Spaulding's motion to dismiss be denied.

---

* Editors' Note: Order by Judge Torres adopted the Report and Recommendation as an Order of the District Court on July 20, 2001.

## I. Background

Plaintiff Michael Boyd, an inmate confined at the Adult Correctional Institution, Cranston, Rhode Island, filed an Amended Complaint pursuant to 42 U.S.C. § 1983 alleging a violation of his constitutional rights. In his Amended Complaint, plaintiff names as defendants: Dr. Tej Bansal, Dr. Chang, Joseph Marocco, Dr. Anne Spaulding, George Vose, Marim Brown, Lorrane Ware, Dr. Flannigan, Jake Gadsen, Lt. Marco, Lt. Todd Amaral, Lt. Muernier, Carole Dwyer, and Stephen Molker. Plaintiff's factual allegations, which are taken as true for purposes of the instant motion, are as follows. Plaintiff alleges:

### A. Amended Complaint.

In June 1994, the plaintiff contacted Dr. Bansal with respect to a cyst that the plaintiff had on the verge of his rectum. Dr. Bansal declined to examine the plaintiff at that time, even though the plaintiff informed Dr. Bansal that he was in pain. A few days later, the plaintiff was seen by Dr. Chang. Dr. Chang informed the plaintiff that the cyst needed to be "lanced out".

Several weeks passed, and the plaintiff did not receive any treatment for the cyst. Plaintiff then submitted a medical slip, and saw Dr. Watson, a non-party to this litigation. Dr. Watson also agreed that the cyst needed to be lanced out.

Several weeks passed again, and the plaintiff still did not receive any treatment. Then, in "October"[1], Dr. Watson examined the plaintiff again. Dr. Watson told the plaintiff that he needed surgery due to the lack of prompt medical care.

Plaintiff then contacted his attorney, his family, and Governor Lincoln Almond, with respect to his lack of medical care. As a result of making these inquiries, plaintiff was placed in the High Security Unit at the ACI. While in high security, Dr. Bansal threatened to keep the plaintiff in the hospital if he did not stop calling his lawyer, his family and the Governor. In January 1997, plaintiff finally had surgery on the cyst.

Plaintiff then alleges that he contacted a state representative, Maxine Shavers, with respect to his inadequate medical care that the ACI. After contacting Shavers, plaintiff alleges the DOC fabricated a disciplinary charge on July 29, 1999. In the disciplinary charge, plaintiff was accused of assaulting another inmate.

With respect to the disciplinary charge, plaintiff alleges that correctional officers failed to conduct an investigation, and that during the disciplinary hearing, he was not permitted to present a defense. The disciplinary board ultimately found the plaintiff guilty, which was affirmed by Warden Gadsen. As a result of the guilty finding, plaintiff received 25 days in segregation and lost 53 days of good time credit.

While in segregation, plaintiff was charged with additional disciplinary infractions, including, extortion, threatening, and stealing. The disciplinary charges were based upon confidential informants, who, the plaintiff alleges were neither confidential nor reliable.

At the disciplinary hearing on the new charges, plaintiff alleges that the board falsified the report which stated that Lt. Marko testified before the board, when, in fact, he did not. Plaintiff alleges that as a result of these two guilty findings by the disciplinary board, he was denied parole.

Based upon the above allegations, plaintiff asserts in his Amended Complaint that he is entitled to redress pursuant to 42

---

1. Plaintiff does not identify a specific day or year.

U.S.C. § 1983 for violations of his Eighth and Fourteenth Amendment rights.

## B. Plaintiff's "Supplemental" Complaints and "Supplemental Complaint Continuation."

Plaintiff thereafter filed with the Court two "Supplemental" Complaints and one "Supplemental Complaint Continuation." Defendant Spaulding has objected to the Supplemental Complaints. After reviewing the averments made therein, the "Supplemental" Complaints and the "Supplemental Complaint Continuation" are more akin to amendments to his Amended Complaint since the averments set forth transactions that occurred during the time frame set forth in the Amended Complaint. *See* Fed.R.Civ.P. 15(a); Fed.R.Civ.P. 15(d).

Since the plaintiff is *pro se*, I will treat the averments made in the "Supplemental" Complaints and the "Supplemental Complaint Continuation" as amendments to his Amended Complaint. Plaintiff's assertions therein are as follows. Plaintiff alleges:

### 1. Plaintiff's "Supplemental Complaint" Regarding Dr. Spaulding.

Plaintiff asserts that Dr. Spaulding examined the plaintiff on numerous occasions between May 3, 1997 and March 3, 2000, and that Dr. Spaulding had told him that his medical problems were all "in his head." But on March 3, 1997, Spaulding told the plaintiff that he needed surgery for a hernia, and that he would be taken to an outside facility for treatment. Plaintiff, however, did not receive the surgery as indicated by Spaulding. Thereafter, Spaulding saw the plaintiff, and apologized for his lack of medical care.

Plaintiff then alleges that he contracted Hepatitis C "from the medical staff" at the ACI. Plaintiff was given interferon for his hepatitis, and alleges that Spaulding admitted that he was taken off the interferon prematurely by an ACI nurse. Plaintiff avers that Spaulding knew of his medical problems, but did nothing to help him. Plaintiff asserts that he was in "pain and suffering" and that Spaulding allowed his medical conditions to go untreated.

### 2. Plaintiff's "Supplemental Complaint Continuation."

In June 1994, Dr. Chang examined the plaintiff with respect to the cyst. Chang prescribed medication, and requested that a furlough be granted so the plaintiff could have the cyst lanced out. On July 14, 1994 and on August 5, 1995, plaintiff was reexamined by Dr. Chang and was continued on his medication.

On August 22, 1995, Plaintiff saw Chang again, and requested treatment. Dr. Chang thereafter made an agreement with the plaintiff to treat him so long as he didn't file suit against the DOC. The plaintiff even offered to pay for the treatment. On or about October 22, 1995, the DOC reneged on this agreement, but provided the plaintiff with the surgery. Following plaintiff's operation, Dr. Chang examined the cyst area, and told the plaintiff that it was properly healed, even though the plaintiff was still in pain.

Plaintiff then avers that defendants Marocco, Gadsen, Vose, and Dr. Bansal knew of the plaintiff's medical issues, and did nothing to ensure that he get proper treatment. Plaintiff also alleges that Dr. Bansal removed and destroyed documents from the plaintiff's medical file.

With respect to plaintiff's disciplinary infractions, plaintiff alleges that Deputy Dywer and Inspector Molker failed to properly investigate plaintiff's bookings. Plaintiff also asserts that Lt. Muernier and members of the disciplinary board refused to allow the plaintiff to call witnesses.

### 3. Plaintiff's "Supplemental Complaint" regarding Dr. Timothy Flannigan.

Dr. Flannigan examined the plaintiff on June 15, 1995 with respect to the cyst on the plaintiff's rectum. Dr. Flannigan thereafter told the plaintiff the had hemorrhoids, and that the plaintiff did not need surgery. Plaintiff alleges since Dr. Flannigan did not take other courses of action, he was in pain, and that Dr. Flannigan helped the DOC cover up his medical problems.

### C. Instant Motions.

Defendants Dr. Timothy Flannigan and Dr. Anne Spaulding have moved to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Drs. Flannigan and Spaulding assert that the (1) facts alleged by the plaintiff fail to rise to a constitutional level and (2) instant claims are barred by the applicable statute of limitations. Accordingly, they assert that they are entitled to a dismissal pursuant to Fed.R.Civ.P. 12(b)(6).

### II. Discussion

### A. Rule 12(b)(6) Standard.

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of actions which fail to state a claim upon which relief can be granted. In ruling on a motion filed under Rule 12(b)(6), the court must "accept the well pleaded factual averments of the \*\*\* complaint as true, and construe these facts in the light most favorable to the [plaintiff]." *Chongris v. Board of Appeals*, 811 F.2d 36, 37 (1st Cir.1987). A Rule 12(b)(6) motion will only be granted when, viewed in this manner, it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

Under a Rule 12(b)(6) motion, "a reviewing court is obliged neither to credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation, nor to honor subjective characterizations, optimistic predictions, or problematic suppositions." *United States v. AVX Corp.*, 962 F.2d 108, 115 (1st Cir. 1992). Unverifiable conclusions, not supported by the stated facts, deserve no deference. *Id.* Thus, in ruling on the motion to dismiss, the pertinent inquiry is whether plaintiff's complaint sets forth sufficient factual allegations which, if proven, would support his claims.

### B. 42 U.S.C. § 1983 and Plaintiff's Claims of Constitutional Deprivations.

Title 42, Section 1983 of the United States Code provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress ...

Section 1983 does not confer substantive rights but merely provides a vehicle for vindicating federal rights elsewhere conferred. *Graham v. Connor*, 490 U.S. 386, 393–394, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2694, 61 L.Ed.2d 433 (1979)). In seeking redress pursuant to § 1983, plaintiff alleges that Drs. Flannigan and Spaulding violated his right secured to him by the Eighth Amendment to the United States Constitution to be free from "cruel

and unusual punishment." Thus, the relevant inquiry is whether the facts, as stated in the Amended Complaint, rise to the level of a violation of the Eighth Amendment.

### 1. Plaintiff's Eighth Amendment Claims.

■ The Eighth Amendment to the U.S. Constitution prohibits the government from imposing cruel and unusual punishments. U.S. CONST. amend. VIII. This prohibition proscribes punishments that are torturous or barbarous. However, the Eighth Amendment also proscribes more than physically barbarous punishments. *See e.g. Gregg v. Georgia,* 428 U.S. 153, 171, 96 S.Ct. 2909, 2924, 49 L.Ed.2d 859 (1976). The Amendment embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency. *Estelle v. Gamble,* 429 U.S. 97, 101, 97 S.Ct. 285, 289, 50 L.Ed.2d 251 (1976). Repugnant to the Eighth Amendment are punishments which are incompatible with the evolving standards of decency that mark the progress of a maturing society. *Trop v. Dulles,* 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958).

■ These basic principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if those authorities fail to do so, those needs will not be met. *Estelle,* 429 U.S. at 101, 97 S.Ct. at 289. In the worst case, such a failure may actually produce physical torture or a lingering death. *Id.* In the less serious case, denial of medical care may result in pain and suffering. *Id.* The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency. *Id.* Accordingly, the deliberate indifference to serious medical needs of prisoners constitutes the unneces-

sary and wanton infliction of pain proscribed by the Eighth Amendment. *Id.* This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983. *Id.*

■ To state an Eighth Amendment a claim for denial of adequate medical care, a plaintiff must allege (1) a sufficiently serious condition, one that may produce death, degeneration, or extreme pain, *See Hathaway v. Coughlin,* 99 F.3d 550, 553 (2nd Cir.1996), and (2) that the defendants acted with a culpable state of mind, which must be the equivalent of criminal recklessness; namely when the official knows of and disregards an excessive risk to inmate health or safety. *See id.* Mere negligence or medical malpractice does not constitute deliberate indifference, nor do mere differences of opinion between the prisoner and the defendants concerning the proper course of treatment. *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291. Rather, the official must intentionally deny or delay access to medical care or intentionally interfere with the treatment once prescribed. *See id.*

### a. Plaintiff's Claims against Dr. Flannigan.

■ Here, plaintiff asserts that Dr. Flannigan examined the plaintiff on June 15, 1995. At that time, Dr. Flannigan told the plaintiff he had hemorrhoids, and that the plaintiff did not need surgery. Plaintiff alleges that since Dr. Flannigan did not take other courses of action, he was in pain.

Here, plaintiff's claims fall far short of alleging a violation of his Eighth Amendment rights by Dr. Flannigan. Plaintiff here, disagrees with the course of action taken by Flannigan, or at the very best, of an improper diagnosis. However, plaintiff is not entitled to redress under the Eighth Amendment because he has a difference of opinion of what course of action he thinks should have been taken, or for medical malpractice. *See id.* Medical malpractice, if there is any here, does not become a constitutional violation merely because the victim is a prisoner. *Id.* Moreover, the fact that the plaintiff feels something more should have been done is not a sufficient basis for a deliberate indifference claim. Accordingly, Dr. Flannigan's motion to dismiss should be granted, since the allegations asserted do not rise to the level of an Eighth Amendment violation.

### b. Plaintiff's Claims against Dr. Spaulding.

With respect to plaintiff's claims made against Dr. Spaulding, plaintiff alleges that he spoke to her concerning his medical conditions on several occasions, and that she responded that his problems were "all in his head". Spaulding, according to the plaintiff, thereafter diagnosed the plaintiff as having a hernia, and told him would need to have surgery. Plaintiff, however, alleges that the surgery was not forthcoming. Plaintiff then avers that he contracted Hepatitis C, and was prematurely taken off treatment. Plaintiff alleges that Spaulding knew that he was in "pain and suffering" and that she allowed his medical conditions go untreated.

To state an Eighth Amendment claim for denial of adequate medical care, the plaintiff must allege a sufficiently serious condition, one that may produce death, degeneration, or extreme pain and that Dr. Spaulding acted with a culpable state of mind, which must be "the equivalent of criminal recklessness"; namely when the official knows of and disregards an excessive risk to inmate health or safety. Here, plaintiff first alleges at least two serious conditions that he claims Spaulding was aware of: a hernia, and Hepatitis C. With respect to these conditions, plaintiff has alleged that he was "in pain and suffering." Second, plaintiff has alleged that Spaulding knew of his medical problems, since she examined him on numerous occasions, and turned a blind eye to them. These allegations, which are taken as true at this stage of the litigation, are sufficient to state a claim under the Eighth Amendment's deliberate indifference standard. Accordingly, Dr. Spaulding's motion to dismiss should be denied. I so recommend.

### 2. Statute of Limitations.

In order to properly bring a 42 U.S.C. § 1983 suit, the action must be commenced within the applicable time limitations period. In actions brought under 42 U.S.C. § 1983, a state's personal injury statute governs the time limitations period. *Owens v. Okure,* 488 U.S. 235, 236, 109 S.Ct. 573, 574, 102 L.Ed.2d 594 (1989); *Wilson v. Garcia,* 471 U.S. 261, 279–80, 105 S.Ct. 1938, 1949, 85 L.Ed.2d 254 (1985). Rhode Island's general personal injury statute of limitations is three years. R.I.Gen.Laws 9–1–14; *see also Walden III Inc. v. State of Rhode Island,* 576 F.2d 945, 947 (1st Cir.1978). Thus, a three year statute of limitations applies for the claims made by the plaintiff in this case.

### a. Dr. Flannigan.

Here, plaintiff alleges that Dr. Flannigan examined and diagnosed the plaintiff on one occasion: June 15, 1995. During this one encounter with Dr. Flannigan, plaintiff alleges that his Constitutional rights were violated and he is entitled to

redress under 42 U.S.C. § 1983. However, plaintiff's claims, with respect to Dr. Flannigan, are untimely. Plaintiff had three years, or until June 14, 1998, to file suit based upon this one visit with Dr. Flannigan. *See Owens,* 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594. Plaintiff did not do so. Plaintiff did not commence the present action until February 25, 2000. Since plaintiff did not file the instant claim within the three year limitation period, the claims made against Dr. Flannigan are time barred, and accordingly, should be dismissed. I so recommend.

### b. Dr. Spaulding.

With respect to the claims made against Dr. Spaulding, plaintiff asserts that she examined the plaintiff on numerous occasions, including May 3, 1997, and March 3, 2000. Since plaintiff makes allegations against Spaulding that began on May 3, 1997, plaintiff had until May 2, 2000, to file suit. He did so. Plaintiff filed this instant cause of action on February 25, 2000. Accordingly, plaintiff's claims made against Spaulding are not time barred.

### III. Conclusion

For the reasons stated above, I recommend that Dr. Flannigan's motion to dismiss be granted, and Dr. Spaulding's motion to dismiss be denied. Any objection to this report and recommendation must be specific and must be filed with the clerk of court within ten days of its receipt. Failure to file timely, specific objections to this report constitutes waiver of both the right to review by the district court and the right to appeal the district court's decision. *United States v. Valencia–Copete,* 792 F.2d 4 (1st Cir.1986) (per curiam); *Park Motor Mart, Inc. v. Ford Motor Company,* 616 F.2d 603 (1st Cir.1980).