IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 00-21060
Summary Calendar
_____

FELIX LYLE COWAN,

Plaintiff-Appellant,

versus

WAYNE SCOTT, Director, Texas Department
of Criminal Justice; UNIVERSITY OF TEXAS
MEDICAL BRANCH, TREATMENT TEAM PSYCHIATRIC STAFF,

Defendants-Appellees,

**CONSOLIDATED WITH**
_____

No. 00-21074
_____

FELIX L. COWAN,

Plaintiff-Appellant,

versus

WAYNE SCOTT, Director, Texas Department of Criminal
Justice,

Defendant-Appellee.

--------------------
Appeals from the United States District Court
for the Southern District of Texas
(H-99-CV-2788 & H-98-CV-2010)
--------------------
January 4, 2002
Before JOLLY, SMITH, and WIENER, Circuit Judges.

PER CURIAM:[*]

_____

    [*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

This appeal involves two cases instituted by Texas prisoner Felix Cowan (#765738), pursuant to 42 U.S.C. § 1983. The district court dismissed Cowan's suits as frivolous and for failure to state a claim. After the appeals were consolidated, we requested briefing from the Texas Attorney General's Office, and received a letter brief containing information about the dates of Cowan's incarceration and transfers, as we had requested, together with exhibits that apparently came from the district court and presumably were available to that court at the hearing conducted pursuant to Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985).

We perceive that the district court did not adequately flesh out Cowan's claims of (1) forced psychiatric commitment on several occasions without a hearing that complied with Vitek v. Jones, 445 U.S. 480, 493-95 (1980), (2) forced medication, and (3) unconstitutional living conditions; and we recognize that questions of the timeliness of Cowan's claims and the sufficiency of Cowan's appellate brief are implicated as well. For the reasons set forth below, we vacate and remand.

## I.

### FACTS AND PROCEEDINGS

Cowan's first complaint was filed in June 1998 against TDCJ Director Wayne Scott. Cowan alleged that he was forced to receive psychiatric treatment and medication. In a more definite statement filed in May 2000, Cowan asserted that he had been transferred to the psychiatric unit (Jester IV) in March 1997 without a proper hearing, contending that he was not allowed to call witnesses and

that there was no judge or trial. He further alleged that, while in the Jester Unit, he had been beaten and forced to lie in feces and urine for four to five days without the availability of a shower or toiletries, and that the medication he was forced to take caused tremors, blurred vision, high blood pressure, and other problems. Cowan stated that, "from 1997 until now," he had been forcibly administered medication by a "riot squad."

Grievances filed by Cowan indicated that he received forced psychiatric medication in July 1999 because of "acute psychosis." Cowan's other grievances suggested that psychiatric treatment and medication were at least administered, if not forced, on other occasions in December 1997 and several times in 1999.

The district court ordered that defendant Scott be served with the complaint, but not be made to answer, and that there be a Spears hearing in November 2000. The court ordered Scott and TDCJ representatives to be present at the hearing with records relevant to Cowan's claims.

Cowan's second § 1983 suit was filed in August 1999, against Scott and the "treatment team Jester IV psychiatric unit." Cowan alleged that Scott was aware of the deplorable conditions in the Jester IV unit and that he (Cowan) was forced to accept psychiatric treatment. In a "Statement of Facts" letter, Cowan alleged that, "on several occasions since 1996," he was transferred by threat of force to the psychiatric unit and that he was forcibly administered drugs. He stated that he had been found competent to stand trial, that he was not suicidal, that there was no justification for the

3

forced psychiatric commitment and medication, and that he suffered injuries to his back, shoulder, and knees.

Essentially the same order that had issued in Cowan's first suit — for the complaint to be served on the defendants and for the defendants to be present at a <u>Spears</u> hearing — was issued in his second suit.

A consolidated <u>Spears</u> hearing was held at which Cowan, Dr. Charles Adams, and a prison warden testified. The district court summarized Cowan's claims in both suits as follows: (1) He was denied due process because of forced psychiatric treatment and medication in March 1997; (2) barbaric prison conditions existed in the psychiatric unit (he was forced to lie in feces for days without access to a shower); (3) he was beaten for refusing to take medication; (4) his medication caused seizures, convulsions, blurred vision, and high blood pressure; (5) Defendants Johnson and Scott knew about the conditions because Cowan had notified the prison directors and the Internal Affairs offices by letter; and (6) Cowan alleged additional claims of forced psychiatric treatment and forced medication in his August 1999 suit. Responding to the court's questions, Cowan stated that he was no longer at the Jester IV Unit but was at the Terrell Unit, was taking high blood pressure medication, and was "feel[ing] pretty good."

Dr. Adams testified that Cowan's diagnosis was between atypical paranoid schizophrenia verses a bipolar disorder. Dr. Adams further stated that "two physicians can force medication" on a prisoner if he is a danger to himself or others, but indicated

4

that the records he reviewed did not indicate that Cowan had been forced to take medication between January and May 1997. Dr. Adams said that he came to the Terrell Unit either in December 1999 or January 2000 and that, "reviewing [the record] in a general fashion," he had not seen a history of Cowan's "accepting or rejecting medication." The prison warden testified that there had been several incidences of "staff assault by threat and . . . by physical assault" in 1997.

At the end of the Spears hearing, the district court concluded that: (1) Cowan had not made any showing of deliberate indifference to a medical need; (2) Cowan's pleadings and testimony were insufficient to "show that he was subject[ed] to any prison condition so base[,] inhuman[,] and barbaric" to support an Eighth Amendment claim; (3) the state's interest and policy in "treating inmates who refu[s]e medication . . . [met] the demands of due process, especially [based] upon the testimony that we received today;" and (4) the procedures afforded by the state with respect to forced treatment and medication met the requirements of due process. The district court dismissed Cowan's suits as frivolous and for failure to state a claim, and Cowan timely appealed.

## II

## ANALYSIS

In the appeal of his first suit, Cowan asserts that, since 1997, he has been committed to the psychiatric unit against his will and without a hearing or trial; that he received forced medication by a riot squad at least three times; that the forced-

5

medication incidences were videotaped; and that, during such incidences, he was beaten, had his face rubbed in feces, had "seven men on his back," and was left unconscious for refusing to take his medication.

In the appeal of Cowan's second suit, he asserts that a "psyche tech" dislocated his (Cowan's) shoulder when he refused to give a blood sample while at a state hospital. He asserts further that he was then dragged to a "steel seclusion room," that a blood sample was forcibly taken, and that he was then sedated against his will. Cowan also contends that medical records from the county hospital would show that there are two doctors who witnessed these events. Finally, he states that former Texas governors Ann Richards and George Bush have pardoned him based on the treatment he received, and that he was falsely accused of being mentally unstable.

In both briefs, Cowan cites to Vitek's holding that a prisoner has a due process right to particular procedures before being involuntarily committed to a psychiatric facility. Cowan also cites Spears in both briefs.

Because Cowan's second § 1983 suit was filed in August 1999 and asserts claims of forced psychiatric treatment beginning in 1996, there is a question whether some or all of those claims are time-barred. There is also a question, given the lack of discussion in the pleadings and at the Spears hearing, whether Cowan received forced psychiatric treatment and what procedures were followed in such situations.

6

For § 1983 claims, federal courts apply the general personal injury statute of limitations of the forum state, <u>Owens v. Okure</u>, 488 U.S. 235, 249-50 (1989), which is two years in Texas.  <u>See</u> <u>Piotrowski v. City of Houston</u>, 237 F.3d 567, 576 (5th Cir. 2001), <u>cert. denied</u>, __ S. Ct. __ (Oct. 1, 2001); Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (West 1999).

With respect to the first suit, filed in June of 1998, the defendants contend that Cowan did not properly allege his claim of forced psychiatric treatment until his more definite statement of 2000; that, even though the claim refers to a forced transfer to the psychiatric unit in March 1997, the claim actually concerns Cowan's first transfer to the Jester IV Unit in December 1996; and that Cowan's May 2000 claims about the lack of <u>Vitek</u> procedures with the December 1996 transfer are time-barred.  The defendants then make a simple statement that the second suit was filed in August 1999 and that all claims of the denial of <u>Vitek</u> hearings and forced medication would have to relate to incidences starting from August 23, 1997.

The defendants characterize Cowan's 1998 suit as alleging only one incident of a forced transfer to the psychiatric unit, in March 1997.  The record indicates, however, that Cowan alleged more instances of forced commitment and forced medication and that such claims were timely.

In his June 1998 complaint, Cowan did not specify any particular dates when he was "forced to [ac]cept [] psychiatric therapy[ and] medication."  In his more definite statement, filed

7

in May 2000, two weeks after the district court requested it, Cowan discussed a forced-medication incident alleged to have occurred in March 1997, and also stated that there were other incidences "from 1996 until now" but that he did not have enough paper to address them. Copies of grievances that Cowan filed with his more definite statement show that he complained of forced medication in December 1997, August 1998, and July and August 1999. In his August 1999 suit, Cowan alleged that, "on several occasions since 1996," he was transferred to the psychiatric unit against his will and forced to take medication by threat of force.

Records attached to the defendants' letter brief as exhibits A and C indicate that Cowan was housed in the Jester IV Unit from December 3, 1996 to January 2, 1997; from May 21 to December 7, 1998; from April 23 to August 2, 1999; from August 4 to October 4, 1999; from November 29, 1999 to January 14, 2000; and from November 27, 2000 to February 26, 2001. The defendants advise that there are no records of the December 1996 transfer and that the 1998 and 1999 transfers to the psychiatric unit were involuntary commitments that complied with <u>Vitek</u>.

Cowan's pleadings are vague, yet both suits have raised challenges to a number of instances of involuntary commitment and forced medication, as well as unconstitutional prison conditions, beginning in December 1996. Given that one of his suits was filed in June 1998, his claims should be considered timely.

We could attempt to determine, as the defendants have attempted in their letter brief, which suit challenges which

8

instances.  The record is not sufficiently developed, however, to justify such an exercise.  At the <u>Spears</u> hearing, the district court, which did not indicate that any of Cowan's claims were time-barred, did not develop the dates of the instances forming the basis of Cowan's two suits.  The defendants have not shown whether any of Cowan's claims were time-barred, and it cannot be determined based upon the record before the us.

Regarding Cowan's <u>Vitek</u>, forced-medication, and living-conditions claims, the defendants state that there are no entries in Cowan's medical records before January 1997, making it impossible to determine what procedures were followed with his December 1996 transfer to the psychiatric unit.  The defendants do contend that the record indicates that <u>Vitek</u> procedures were followed with Cowan's May 1998 and April 1999 involuntary transfers to the psychiatric unit.

With respect to involuntary commitment to a psychiatric unit, "a convicted felon [] is entitled to the benefit of procedures appropriate in the circumstances before he is found to have a mental disease and transferred to a mental hospital."  <u>Vitek</u>, 445 U.S. at 493.  "[I]nvoluntary commitment to a mental hospital is not within the range of conditions of confinement to which a prison sentence subjects an individual."  <u>Id.</u>  Similarly, the Due Process Clause affords prison inmates a "significant liberty interest in avoiding the unwanted administration of antipsychotic drugs."  <u>Washington v. Harper</u>, 494 U.S. 210, 221-22 (1990).  An inmate may be treated with antipsychotic drugs against his will if the

treatment "is in the prisoner's medical interests, given the legitimate needs of his institutional confinement" and he is dangerous to himself or others.  Id. at 222.

In Vitek, the Supreme Court approved the district court's formulation of the following procedural safeguards for prisoners facing involuntary commitment:

> "A. Written notice to the prisoner that a transfer to a mental hospital is being considered;
> "B. A hearing, sufficiently after the notice to permit the prisoner to prepare, at which disclosure to the prisoner is made of the evidence being relied upon for the transfer and at which an opportunity to be heard in person and to present documentary evidence is given;
> "C. An opportunity at the hearing to present testimony of witnesses by the defense and to confront and cross-examine witnesses called by the state, except upon a finding, not arbitrarily made, of good cause for not permitting such presentation, confrontation, or cross-examination;
> "D. An independent decisionmaker;
> "E. A written statement by the factfinder as to the evidence relied on and the reasons for transferring the inmate;
> . . . and
> "G. Effective and timely notice of all the foregoing rights."

445 U.S. at 494-95.  Although legal counsel was not required, the Court held that the inmate must be provided with "qualified and independent assistance."  Id. at 497-500 (Powell, J., concurring opinion adopted by majority).  In Harper, the Court approved a policy that allowed antipsychotic drugs to be involuntarily administered when first prescribed by a psychiatrist and then approved by a reviewing psychiatrist.  Harper, 484 U.S. at 222-23.

The exhibits forwarded to us include the following documents: (1) a discharge release summary from October 1998 stating that

10

Cowan "was involuntarily <u>Vitek</u>, admitted on 5/26/98," (2) Clinic Notes stating that Cowan received notification on May 22, 1998, of a <u>Vitek</u> hearing scheduled for May 26, that he was explained his <u>Vitek</u> rights, and that he was to be represented by a social worker; and (3) Clinic Notes stating that there was a <u>Vitek</u> hearing held on May 26, 1998, that Cowan was "uncooperative and threatening," that the "[h]earing [was] held cellside due to pt's. hostility and aggressiveness," that a doctor assessed Cowan as "grossly psychotic," and that Cowan was ordered to be involuntarily committed. The record also contains Clinic Notes from April 26, 1999, stating that Cowan was notified of a <u>Vitek</u> hearing; a <u>Vitek</u> hearing was conducted on April 29, 1999; and Cowan was diagnosed as bipolar and schizophrenic and was involuntarily transferred to the psychiatric unit.

Until its repeal in September 1999 because of <u>Vitek</u>, Tex. Crim. P. art. 46.01 allowed for an involuntary transfer of a prisoner to a mental facility "if a prison physician is of the opinion that the prisoner is mentally ill and would benefit from treatment in a mental hospital." Tex. Crim. P. art. 46.01(2)(a) (Vernon 1999). The pertinent records indicate that at the minimum, Cowan received notice, representation by either a social worker or a psychologist, and some type of hearing in connection with his 1998 and 1999 involuntary transfers, which purportedly followed the guidelines set out in <u>Vitek</u> as opposed to the less stringent Texas law then in effect. We have not been furnished, however, any minutes or documents outlining which procedures were followed at

11

the hearings conducted in 1998 and 1999. Furthermore, the defendants, in their letter brief to us, admit that the records do not contain any documents pertaining to the involuntary transfer in December 1996.

Moreover, the defendants neither address nor cite — and it is virtually impossible to locate amid Cowan's numerous medical records — documentation pertaining to Cowan's allegations of forced medication by a riot squad or his allegations of unconstitutional prison conditions in the psychiatric unit. It is thus not clear from the record that, in fact, (1) <u>Vitek</u> procedures were followed with Cowan's involuntary transfers from 1996 to the time he filed his § 1983 suits, (2) the incidences of forced medication complied with the requirements of <u>Harper</u>, or (3) Cowan did not suffer incidences of unconstitutional prison conditions.

Cowan's two suits, although poorly expressed, allege at least three plausible constitutional violations: (1) involuntary transfer and confinement in the psychiatric unit without adequate procedures, (2) forced medication without proper procedures, and (3) inhumane prison conditions in violation of the Eighth Amendment.

A district court may dismiss an IFP complaint as frivolous or for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B). A complaint is frivolous if it lacks an arguable basis either in law or in fact. <u>Siglar v. Hightower</u>, 112 F.3d 191, 193 (5th Cir. 1997). A complaint lacks an arguable basis in law if it is based on an "indisputably meritless legal theory." <u>Id.</u> (citing <u>Neitzke</u>

12

v. Williams, 490 U.S. 319, 325 (1989)).  A complaint lacks an arguable basis in fact when the allegations are fanciful, fantastic, and delusional or when they "rise to the level of the irrational or the wholly incredible."  Denton v. Hernandez, 504 U.S. 25, 32-33 (1992).

A case may be dismissed for failure to state a claim "only if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations."  Bulger v. United States Bureau of Prisons, 65 F.3d 48, 49 (5th Cir. 1995). A dismissal as frivolous is reviewed for an abuse of discretion. A dismissal for failure to state a claim is reviewed de novo. Black v. Warren, 134 F.3d 732, 733 (5th Cir. 1998).

A pro se prisoner is entitled to develop his complaint factually before a proper frivolousness determination can be made. See Eason v. Thaler, 14 F.3d 8, 9-10 (5th Cir. 1994).  The purpose of a Spears hearing is to "bring into focus the factual and legal bases of prisoners' claims."  Id. at 9 (quoting Spears, 766 F.2d at 181).  Claims should not be dismissed without further factual development unless they are "pure fantasy or based upon a legally inarguable position."  Eason 14 F.3d at 10.

Here, the district court did not inquire of Cowan, Dr. Adams, or the warden whether Cowan's transfers to the psychiatric unit in December 1996, May 1998, and April 1999 complied with the procedures set out in Vitek.  Although the prison records state conclusionally that the 1998 and 1999 transfers followed Vitek hearings, there are no minutes or documentation reflecting whether

13

all the procedural safeguards of <u>Vitek</u> were in fact followed. Furthermore, there are no records whatsoever pertaining to the December 1996 transfer.

With respect to Cowan's forced-medication claims, Dr. Adams stated that he did not see any history of forced medication, yet the copy of one of the grievances that Cowan filed with his more definite statement indicated that he received "enforced [sic] medication [] on 7/29/99 due to acute psychosis." Dr. Adams stated that prison policy allowed involuntary medication when two physicians determined that a prisoner was a danger to either himself or others, but he did not state whether such a procedure was followed with respect to Cowan's forced medication.

With respect to Cowan's claims of inhumane prison conditions, the record is completely undeveloped, and the district court did not inquire about such alleged conditions at the <u>Spears</u> hearing.

In summary, Cowan's answers to interrogatories forwarded by the district court and the <u>Spears</u> hearing transcript are not sufficient to establish that his claims were frivolous or that he failed to state a claim upon which relief could be granted. Although we appreciate the district court's substantial efforts thus far in trying to untangle this case, we are nevertheless constrained to vacate the court's § 1915 dismissal of Cowan's two § 1983 suits as frivolous and for failure to state a claim, and to remand these cases for further development of the record in each, and for further proceedings consistent with this opinion. <u>See</u> <u>Eason v. Thaler</u>, 14 F.3d 8, 9-10 (5th Cir. 1994). In doing so we

14

do not intimate how the district court should rule; neither should our opinion be read as an indication that Cowan's claims might ultimately be found meritorious.

VACATED AND REMANDED.