BERZON, Circuit Judge,
concurring:
I concur in the court’s per curiam opinion as well as in Judge Kleinfeld’s separate concurrence.
GOULD, Circuit Judge, with whom SCHROEDER, Chief Judge, BYBEE and CALLAHAN, Circuit Judges, join, dissenting:
I respectfully dissent, and would affirm the district court’s decision that there was no standing under RICO because Diaz’s complaint did not sufficiently allege an “injury to business or property” within the meaning of the statute.
The majority acknowledges that the district court “reasonably applied the law of RICO standing as it existed at the time,” Maj. Op. at 898, but then concludes that the reasoning of our intervening decision in Mendoza v. Zirkle Fruit Co., 301 F.3d 1163 (9th Cir.2002), now requires reversal. Mendoza’s determination of standing was understandable on its facts, where the conspiracy challenged under RICO was aimed directly at suppressing the wages of farm workers. There the plaintiffs, legal agricultural laborers in eastern Washington, the heartland of Washington’s fruit industry, in their RICO complaint had pleaded that the defendant fruit growers’ scheme was illegally and systematically to hire undocumented immigrants in order to depress the wages of documented workers. Id. at 1166-67. But in that case we did not address the situation we face here, where the alleged loss of employment is merely an indirect and secondary effect of a non-compensable personal injury, Diaz’s alleged “false” imprisonment.[1] Thus Men *908 doza is plainly distinguishable in so far as the illegality there alleged was aimed at the workers’ wages. The majority errs in improvidently extending Mendoza, in which the illegal scheme took dead aim at wage levels and workers’ livelihoods, to apply here, in a case nothing like it. In any event, because we sit en banc to review Diaz’s case, we are not bound by a prior panel opinion, so Mendoza poses no barrier to the majority analyzing the law of RICO standing.
I would hold that Diaz’s claim of employment loss was derived from, and a secondary effect of, his alleged false imprisonment, and any economic losses are part of Diaz’s injury to his person, not distinct injuries to his business or property within the meaning of RICO. By extending Mendoza, the majority creates a split with the Eleventh Circuit decision in Grogan v. Platt, 835 F.2d 844 (11th Cir.1988), and the Seventh Circuit decision in Doe v. Roe, 958 F.2d 763 (7th Cir.1992), both of which held that pecuniary losses incurred as a result of personal injuries were non-compensable under RICO.
I
The Racketeer Influenced and Corrupt Organizations Act (“RICO”), 18 U.S.C. §§ 1961-68, provides a civil remedy of treble damages to “[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter.” Id. at § 1964(c). See Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) (“[T]he plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation.”). It is well-established that not all injuries are compensable under RICO, id. at 496-97, 105 S.Ct. 3275, and a previous en banc panel of our court held that the language of 18 U.S.C. § 1964(c) excluded recovery for personal injuries, Oscar v. Univ. Students Co-op. Ass’n, 965 F.2d 783, 785 (9th Cir.1992) (en banc) (“[I]t is clear that personal injuries are not compensable under RICO.”).[2]
*909 In Oscar, the tenants of an apartment building brought a RICO action against a neighboring student cooperative seeking to recover for losses due to the students’ unruly behavior in the neighboring apartment. Id. at 784-85. Our en bane panel affirmed the district court’s dismissal of the plaintiffs’ claims because the tenants did not allege an injury to business or property cognizable under RICO. Id. at 785. Our decision rested on two bases. First, we held that a showing of injury requires “proof of concrete financial loss” and is “not actionable under RICO unless [it] result[s] in tangible financial loss to the plaintiff.” Id. at 785 (citing Berg v. First State Ins. Co., 915 F.2d 460, 464 (9th Cir.1990)). The plaintiffs failed to allege any pecuniary injury to their property, because, as renters, they did not own the property, and therefore could not allege property value decline because of the alleged acts of their neighbors. Id. at 786-87.
Second, we concluded that the tenants’ injury was not an injury to their property; rather, the injury asserted was for “the personal discomfort and annoyance” of the defendants’ nuisance activities, which, as a “personal injury action,” was not actionable under RICO. Id. at 787-88 (“It is clear, however, that any injury [the plaintiffs have] suffered is at core an intangible personal injury, not a financial loss to property.”). We held that a personal injury action like nuisance is not actionable, “even when it flows from a valuable property interest.” Id.
Under Oscar, then, a claim of false arrest and imprisonment, as a personal injury, is not compensable at all in a RICO action. See, e.g., Owens v. Okure, 488 U.S. 235, 240-41, 251, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989) (explaining that § 1983 claims based on false arrest and imprisonment are “best characterized as personal injury actions” and are subject to a state’s statute of limitations for personal injuries); Black’s Law Dictionary 790 (7th ed.1999) (defining “personal injury” to include “false imprisonment”). Diaz’s allegation of lost employment wages, even construed most favorably to Diaz,[3] was at best merely derived from, and a secondary effect of, his underlying injury of alleged false imprisonment. This circumstance, which was not raised in Mendoza, squarely presents *910 the question whether an injury to business or property sufficient for RICO standing purposes can be derived from a non-com-pensable personal injury.
In our prior en banc decision in Oscar, as in Mendoza, we did not directly address this question. However, in Oscar we did cite approvingly two cases from sister circuits that had answered this question by concluding that a plaintiffs allegations of lost employment were insufficient for RICO standing if they were derived from non-compensable personal injuries. See Oscar, 965 F.2d at 786 (citing Grogan, 835 F.2d at 846-47); id. at 788 (citing Doe, 958 F.2d at 770).
In Grogan, the estates of deceased federal agents involved in a shootout with criminal suspects brought an action against the suspects seeking damages under RICO. The appellants argued that “injury to business or property” included the economic damages that resulted from the injury to the person, such as lost employment or wages. The Eleventh Circuit concluded that the surviving relatives could not recover under RICO for the loss of earning power or employment resulting from their wrongful death claim, holding that the predicate RICO act of the killing of the officers (murder or wrongful death) was a personal injury, not an injury to their “business or property” for purposes of RICO, even though there were tangible economic consequences that resulted from the deaths. Id. at 847 (“In our view, the ordinary meaning of the phrase, ‘injured in his business or property’ excludes personal injuries, including the pecuniary losses therefrom.”). The Eleventh Circuit in Grogan concluded that if Congress had intended the derivative economic damages like the loss of employment to be recoverable under a civil RICO suit, it would not have used the restrictive “business or property” language of 18 U.S.C. § 1964(c). Id. (“Had Congress intended to create a federal treble damages remedy for cases involving bodily injury, injury to reputation, mental or emotional anguish, or the like, all of which will cause some financial loss, it could have enacted a statute referring to injury generally, without any restrictive language.”) (quoting Morrison v. Syntex Labs., Inc., 101 F.R.D. 743, 744 (D.D.C.1984)).
In Doe, the Seventh Circuit considered a case in which a female client had sued her former divorce attorney under RICO for damages stemming from misuse of his position to coerce and intimidate her into having sexual relations with him. 958 F.2d at 765-67. The plaintiff alleged injury to her business and property through, inter alia, a loss of employment wages, which she alleged were cognizable injuries to her property under RICO. Id. at 766, 769-70. The Seventh Circuit disagreed, holding that the plaintiffs claim of lost employment pay stemmed from emotional distress, a personal injury, and that “[t]he terms ‘business or property’ are, of course, words of limitation which preclude recovery for personal injuries and the pecuniary losses incurred therefrom.” Id. at 767, 770. The court concluded:
Doe blurs the distinction between proprietary and personal injuries. Contrary to what Doe seems to suggest, whether she can show a financial loss does not, by definition, establish that she has suffered a business or property injury within the meaning of § 1964(c). Most personal injuries — loss of earnings, loss of consortium, loss of guidance, mental anguish, and pain and suffering, to name a few — will entail some pecuniary consequences.... Doe’s loss of earnings, her purchase of a security system and her employment of a new attorney are plainly derivatives of her emotional distress — and therefore reflect *911 personal injuries which are not compen-sable under RICO.
Id. at 770.
II
Because we cited both Grogan and Doe favorably in our previous precedent,[4] it is not surprising that the district court relied on them, in conjunction with Oscar, in dismissing Diaz’s complaint for lack of standing. In my view the district court properly applied the law. The majority almost recognizes this, but then holds that our decision in Mendoza vitiates the district court’s reliance. However, as I have mentioned above and now reiterate, Mendoza did not raise the issue we face, is distinguishable, and cannot properly be extended to apply here.
In Mendoza, the documented farm workers who brought suit asserted a RICO claim alleging that the eastern Washington fruit grower defendants had conspired to hire undocumented workers in order to depress the documented workers’ wages. Id. at 1166-67. The farm workers’ complaint alleged that the fruit growers knowingly hired illegal alien workers because they knew that the undocumented workers would be forced to accept wages significantly lower than that which would otherwise be paid to legally authorized workers. Id. We held that the plaintiff farm workers sufficiently alleged an injury to their property in the form of lost employment wages. Id. at 1168 & n. 4.[5] Relying on Mendoza, the majority now concludes that Diaz’s claim of lost employment wages when he was imprisoned is similarly sufficient to allege injury to his business or property. Maj. Op. at 899.
Although we said in Mendoza that “[t]he employees allege[d] an injury to their property in the form of lost wages,” in that case the loss of the farm workers’ employment wages was the direct target of the RICO predicate act, a scheme designed to drive down farm labor prices by using illegal workers. 801 F.3d at 1168-69 (“[T]he employees allege that the illegal hiring scheme was divined in order to depress the normal labor market.”), id. at 1170 (“[T]he alleged scheme here was intended to give the growers a contract advantage at the expense of the documented workers, a direct ... injury.”). It was not a case, like Diaz’s, where the alleged loss of employment was solely an indirect effect of a personal injury to Diaz (his false imprisonment). Stated another way, the lost income to laborers in Mendoza was not a secondary or derivative consequence of a personal injury to the farm workers, but rather the direct result of the scheme that aimed at lowering their wages. Diaz has not alleged (nor can he) that his false imprisonment was in any way related to, or directed at, his business or property. *912 Diaz’s allegation is much more like that in Gh’ogan, where the employment losses directly stemmed from another type of personal injury — wrongful death — than like that in Mendoza, where the loss of wages alleged as injury had been the precise aim of the alleged illegal conduct and conspiracy of growers.[6]
Ill
The majority acknowledges that in Mendoza we did not “elaborate” on the question at bar, “relegating its discussion of the nature of the injury to a footnote.” Maj. Op. at 899. As I have explained above, that case should not be interpreted to apply, especially where doing so creates a circuit split, runs against the declared aims of Congress, and is in tension with Congress’s language of RICO. Instead of extending Mendoza to the case of Diaz so unlike it, I would simply follow the Seventh and Eleventh Circuits by holding that Diaz’s claim of employment loss was derived from, and a secondary effect of, his allegedly false imprisonment, and any economic losses are part of Diaz’s injury to his person, not distinct injuries to his business or property within the meaning of RICO. See Grogan, 835 F.2d at 847 (holding that intertwined economic consequences of personal injuries “are so fundamentally a part of personal injuries that they should be considered something other than injury to ‘business or property’ ”); see also Oscar, 965 F.2d at 791 (Kleinfeld, J., dissenting) (citing Grogan for the proposition that “murder is personal injury, not injury to property, and pecuniary losses flowing from the wrongful death could not transform personal injury into injury to property”).
Realizing that Mendoza alone cannot support its holding, the majority purports to rely on Doe, describing the Seventh Circuit’s approach as the “best-reasoned” one. Maj. Op. at 899. The majority’s reliance is misplaced, and its reading of Doe selective and incorrect. The plaintiff in Doe alleged several different injuries to her business or property, all of which were found to be non-compensable by the Seventh Circuit. The Seventh Circuit affirmed the district court’s dismissal of some of Doe’s claims because the court determined that, as an initial matter, the injuries alleged were not injuries to a business or property interest, as determined by the applicable state law. Doe, 958 F.2d at 767-68 (affirming the district court’s dismissal of Doe’s allegation of injury to her business or property from her divorce lawyer’s coercive extraction of her sexual services because “sexual labor has no legal value in Illinois,” and thus Doe’s sexual relations with her former attorney was not an injury to her business or property for purposes RICO). However, Doe also ai- *913 leged that she missed days of work — her gainful employment — due to the defendant’s constant harassment and intimidation of her. Id. at 766 (“As a result of this pattern of harassment and intimidation, Doe missed work for several days and had to purchase an enhanced security system for her car and garage.”). The Seventh Circuit concluded that such an allegation was still insufficient for standing to bring a RICO claim because such injury stemmed from a non-compensable personal injury: “Doe’s loss of earnings, her purchase of a new security system and her employment of a new attorney are plainly derivative of her emotional distress — and therefore reflect personal injuries which are not compensable under RICO.” Id. at 770 (emphases added) (citing, inter alia, Grogan, 835 F.2d at 847). Thus, although the majority fails to recognize it, in Doe the Seventh Circuit addressed the same situation we face here — -an allegation of lost employment wages stemming from a non-compensable personal injury. Diaz allegedly missed work because he was falsely incarcerated, while Doe allegedly missed work due to the continuous threats and harassment of her former divorce attorney. Both plaintiffs alleged injury to business or property wholly derived from personal injuries (false imprisonment and emotional distress, respectively). This inescapable truth belies the majority’s purported reliance on Doe for its extension of Mendoza; the majority is actually in conflict with Doe, just as it is in conflict with Grogan.[7]
The majority denies it creates a circuit split with Grogan, attempting to disguise, distract, or detract from the circuit split by claiming that the plaintiffs in Grogan might not have alleged a loss of employment recognized as property under the applicable state law. Maj. Op. at 902 n. 2. The same critique can be made of Diaz: We have no clue from Diaz’s complaint what “employment” Diaz has alleged to have lost, if any, while he was “unjustly” incarcerated, and whether that employment would be considered property or business under California law, or not. By comparison, we can say with some certainty what loss of employment wages was alleged in Grogan because, unlike in this case, we know for a fact that the plaintiffs in that case were gainfully employed: They were former agents of the Federal Bureau of Investigation who narrowly escaped death in a gun battle with suspected bank robbers, and the estates of those FBI agents who were not so fortunate. Grogan, 835 F.2d at 845. The majority should concede that FBI employment would qualify as a state-protected property interest under its own test, and this undermines the majority’s argument, resting on the incorrect premise that in Grogan no valid state property right was alleged, involved, or evoked.
IV
In Oscar, we concluded by quoting with approval from the Seventh Circuit’s Doe: “Perhaps the economic aspects of [a fundamentally personal injury] could, as a theoretical matter, be viewed as injuries to ‘business or property,’ but engaging in such metaphysical speculation is a task best left to philosophers, not the federal judiciary.” Oscar, 965 F.2d at 788 (quot *914 ing Doe, 958 F.2d at 770). Following this logic, I would today hold that an allegation of lost employment that flows from a personal injury is not a separate injury to business or property, but rather is a derivative part and parcel of the underlying non-compensable personal injury. See Grogan, 835 F.2d at 848 (“We do not hold that plaintiffs may never recover under RICO for the loss of employment opportunities. We merely hold that the appellants cannot recover under RICO for those pecuniary losses that are most properly understood as part of a personal injury claim.”). In holding otherwise, the majority opens the RICO door to any plaintiffs lawyer savvy enough to include an allegation that other wrongs lead to any degree of lost employment, leaving district courts and appellate panels the undesirable job of “metaphysical speculation” against which the Oscar and Doe courts warned. Instead of giving the “injury to business or property” requirement “restrictive” meaning, see Reiter, 442 U.S. at 339, 99 S.Ct. 2326, as did the Eleventh Circuit in Gro-gan and the Seventh Circuit in Doe, the majority’s interpretation goes far to read the “business or property” requirement out of the statute, as there likely may be an indirect, hypothetical, and derivative loss of wages whenever there is a personal injury of a person who is otherwise employed.[8] Yet it is wrong in theory and imprudent in practice for us to ignore the restrictive language set by Congress. Id. (“In construing a statute we are obliged to give effect, if possible, to every word Congress used.”). If Diaz’s complaint has sufficiently stated a claim under RICO, then the majority’s decision means that there is no meaningful “injury to business or property” standing limitation at all. The majority’s view here takes RICO beyond the bounds that were set by Congress. Indeed, the majority strains to expand RICO for no good reason as well, because persons with asserted injuries like those urged by Diaz have a plain and satisfactory remedy in bringing a 42 U.S.C. § 1983 action, if timely asserted, for violation of their civil rights. I respectfully dissent.[9]

. Diaz was convicted on charges that he alleges were trumped up, relying on the Rampart scandal that tarnished the Los Angeles Police Department. The premise that he was "unjustly incarcerated” — which is the underlying basis of his RICO claim — is highly questionable. We granted the appellee’s motion that we take judicial notice, pursuant to Federal *908 Rule of Evidence 201, of the post-conviction decisions rendered in appellant Diaz's criminal case. The California Court of Appeal affirmed Diaz's 1999 conviction for "attempted murder, aggravated mayhem, assault by means likely to produce great bodily injury, and assault with a semiautomatic weapon, with enhancements for discharging a firearm causing great bodily injury, firearm use and infliction of great bodily injury,” and the California Supreme Court and United States Supreme Court denied his petitions for further review. See People v. Diaz, 95 Cal.App.4th 695, 115 Cal.Rptr.2d 799, 801-02 (2002), reh’g denied (Feb. 22, 2002), review denied (Apr. 17, 2002), & cert. denied, 537 U.S. 907, 123 S.Ct. 242, 154 L.Ed.2d 183 (2002). Diaz subsequently filed a federal habeas petition in the United States District Court for the Central District of California, which has been denied by the district court. Moreover, in that habeas petition, Diaz argued only that his right to a fair trial and due process were violated by the removal of a juror; he did not contest the sufficiency of evidence to support his conviction. An observer might wonder if there is any substance at all to the RICO claim asserted by Diaz. Because I conclude the district court correctly found no standing, I need not address other grounds for affir-mance that may be supported by the record.

. Our holding in Oscar that personal injuries are not compensable under RICO is in accord with the decisions of our sister circuits, see, e.g., Hamm v. Rhone-Poulenc Rorer Phanns., Inc., 187 F.3d 941, 954 (8th Cir.1999); Bast v. Cohen, Dunn & Sinclair, PC, 59 F.3d 492, 495 (4th Cir.1995); Libertad v. Welch, 53 F.3d 428, 437 (1st Cir.1995); Roe, 958 F.2d at 767; Genty v. Resolution Trust Coip., 937 F.2d 899, 918-19 (3d Cir.1991); Grogan, 835 F.2d at 847; Drake v. B.F. Goodrich, Co., 782 F.2d 638, 644 (6th Cir.1986), as well as in step with the analogous guidance of the Supreme Court. See Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992) (interpreting RICO and the Clayton Act in tandem and stating that "[Congress] used the same words [in RICO *909 and the Clayton Act], and we can only assume it intended them to have the same meaning that courts had already given them.”); Reiter v. Sonotone Corp., 442 U.S. 330, 339, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979) (construing the same "business or property” language in the Clayton Act and holding that "[t]he phrase 'business or property' also retains restrictive significance. It would, for example, exclude personal injuries suffered.”); see also Sedima, 473 U.S. at 509, 105 S.Ct. 3275 (Marshall, J„ dissenting) ("In addition, the statute permits recovery only for injury to business or property. It therefore excludes recovery for personal injuries.”); but cf. Khurana v. Innovative Health Care Sys., Inc., 130 F.3d 143, 149 (5th Cir.1997). Although three judges of our circuit dissented in Oscar, they, too, agreed that personal injuries are not compensable under RICO. 965 F.2d at 789 (Kleinfeld, J., dissenting).

. Diaz’s complaint alleged numerous injuries, the relevant one being, "lost employment, employment opportunities, and the wages and other compensation associated with said business, employment and opportunities, in that plaintiff was rendered unable to pursue gainful employment while defending himself against unjust charges and while unjustly incarcerated.” Depending on how one reads the complaint, Diaz either alleged the loss of employment while he was incarcerated, or he alleged the loss of the ability to pursue gainful employment, or both. Construing Diaz's complaint generously, as we must in reviewing a 12(b)(6) dismissal, see, e.g., Pegram v. Herdrich, 530 U.S. 211, 230 n. 10, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000), the allegation is sufficient to raise the issue of loss of actual employment.

. See Oscar, 965 F.2d at 786 (citing Grogan in support of its holding that personal injuries are not compensable under RICO); id. at 788 (citing Doe); id. at 791 (Kleinfeld, J., dissenting) (citing Grogan for the holding that the presence of pecuniary losses cannot transform a personal injury into an injury to property); see also Berg, 915 F.2d at 463 (quoting Grogan at length and concluding that "[w]e follow the Eleventh Circuit and hold that, as a matter of law, personal injury, including emotional distress, is not compensable under section 1964(c) of RICO. Even if the directors had incurred pecuniary losses from emotional distress, they would not be compensable under RICO.”).

. The panel in Mendoza stated: ''[W]hat is required [to sufficiently allege injury to business or property] is precisely what the employees allege here: a legal entitlement to business relations unhampered by schemes prohibited by the RICO predicate statutes.” Id. at 1168 n. 4. In context the rule of Mendoza does nothing more than give RICO standing when the wages of employees are directly hampered by an alleged illegal scheme.

. In any event, we sit en banc and are not bound by the Mendoza panel decision. See Fed. R.App. P. 35(a); Ninth Cir. R. 35-1; Thompson v. Calderon, 120 F.3d 1045, 1051 (9th Cir.1997), rev’d on other grounds, 523 U.S. 538, 118 S.Ct. 1489,140 L.Ed.2d 728 (1998). It might make sense to defer to a previous panel's persuasive analysis of the difficult question posed by Diaz’s case but that is not the case with Mendoza which neither pondered nor ruled on the standing issues raised by a claim incidental to personal injury. Further, the panel in Mendoza’s self-described "key task” was the causation inquiry of RICO standing: to "determine whether [the farm workers’] injury was 'by reason of’ the growers’ alleged violations.” 301 F.3d at 1168. While the panel discussed causation for four pages, id. at 1168-72, it only touched upon the "injury to business or property” requirement in one textual sentence and accompanying footnote. Id. at 1168 & n. 4. As I have explained, Mendoza’s statement on injury to business or property can be understood in the context of a conspiracy to depress wage rates, but did not by its own terms or reasoning reach the case of lost income resulting from false imprisonment.

. The majority correctly acknowledges Doe's allegation of lost employment, but incorrectly, and confusedly, concludes that "no injury to business or property was actually alleged.” Maj. Op. at 900. Doe alleged the same injury to business or property as Diaz: lost employment wages. If, as the majority concludes, Doe did not allege any injury to her business or property, then neither has the plaintiff in the case at bar alleged an injury to his business or property.

. Statutory standing under 18 U.S.C. § 1964(c) also includes a causation requirement that encompasses factual and proximate causation, including as a "central element! ]” a "direct relation between the injury asserted and the injurious conduct alleged." See Holmes, 503 U.S. at 268-69, 112 S.Ct. 1311; see also Or. Laborers Employers Health & Welfare Trust Fund v. Philip Morris, Inc., 185 F.3d 957, 963 (9th Cir.1999). While the majority does not address this RICO standing requirement, it is not clear that Diaz's complaint sufficiently alleged causation. Any allegedly "injurious conduct” of the defendant-appellee LAPD Chief Parks, was followed by a series of intervening causes independent of Parks before "causing” Diaz’s loss of employment: the prosecutor who decided if, when, and how to prosecute Diaz; the state trial judge who presided over the case; the jury who convicted Diaz; and the state courts of appeal that have subsequently affirmed his conviction. Cf. Anderson v. Ayling, 396 F.3d 265, 270 (3d Cir.2005) (holding that there was an insufficient nexus between the alleged RICO injury and the defendants in part because the defendants’ actions were "filtered through [a] long chain of intervening causes”). Because I conclude that the district *915 court correctly found no "injury to business or property” within the meaning of RICO, this compels the conclusion that there is no RICO standing, and I need not reach whether Diaz has otherwise satisfied the standing requirement by sufficiently alleging causation. By contrast, because the majority errs by concluding that there is injury to business or property, it also then errs by not addressing the standing requirement of causation.