967 F.2d 589
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Angelica NIEBLA, By and Through her Guardian ad Litem,
Marcelino NIEBLA; Marcelino Niebla, an
individual; Maria Niebla, an
individual, Plaintiffs-Appellants,
v.
COUNTY OF SAN DIEGO, Defendant-Appellee.
 No. 90-56302.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 7, 1991.
Decided June 23, 1992.
 
 Before SNEED, BEEZER and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 This appeal raises the question: What does the Constitution require a county social worker to do before seeking a court order authorizing emergency medical treatment for a child whose religion proscribes that treatment? Angelica Niebla and her parents are Jehovah's Witnesses who object on religious grounds to blood transfusions. When Angelica was twelve years old and again when she was fifteen, county social workers successfully sought emergency, ex parte orders authorizing blood transfusions. The Nieblas sued thecounty alleging violations of 42 U.S.C. § 1983 (1988) and California law. The district court dismissed the federal claims under Fed.R.Civ.P. 12(b)(6) and remanded the pendant state claims. The Nieblas timely appeal the dismissal. We have jurisdiction pursuant to 28 U.S.C. § 1291 (1988) and we affirm.
 
 
 3
 * Angelica Niebla and her parents, Marcelino and Maria Niebla, are Jehovah's Witnesses. They accept their faith's teaching that receiving a blood transfusion is a serious violation of God's Word as expressed in the admonition to "abstain from blood." See, e.g., Acts 15:29. They also believe that a transfusion involves more danger and uncertainty than non-Witnesses generally associate with the procedure.
 
 
 4
 In October 1986, twelve year old Angelica was hospitalized with a falling blood count. On October 13, 1986, following a doctor's request, a social worker from San Diego County ("the county") obtained an ex parte custody and transfusion order over the telephone from the Juvenile Division of the San Diego County Superior Court. No blood was transfused. The next day, the juvenile court took testimony from Angelica's parents regarding the family's opposition to blood transfusions. The court left the blood order in place and continued the hearing. On October 21, 1986, the court withdrew the order because blood had not been transfused and Angelica's condition had improved.
 
 
 5
 On December 10 and 11, 1986, the juvenile court held a trial on the medical neglect petition the county had filed against Angelica's parents. Angelica, her parents and Angelica's attending physician testified. The court dismissed the petition. In the course of the proceeding, Angelica's attorney urged the court to find that Angelica was a "mature minor" capable of determining her own medical care in the future. The court refused to make this finding.
 
 
 6
 In March 1989, Angelica, then fifteen years old, was again admitted to the University of California at San Diego Medical Center. On the morning of March 11, on a doctor's recommendation, a county social worker obtained an emergency, ex parte custody and transfusion order over the telephone from Judge Kapiloff of the juvenile court. Later that morning, Angelica's attorney arrived at the hospital and tried, through the social worker, to arrange for a hearing at the hospital to establish Angelica's decision-making capacity. Judge Kapiloff declined to hold a hearing at the hospital. That evening, Angelica received a transfusion despite her protestations.
 
 
 7
 On March 13, 1989, Judge Kapiloff granted an emergency, ex parte order for all transfusions needed to save Angelica's life during her hospitalization. On March 15, the Nieblas petitioned the California Court of Appeal for a writ of habeas corpus. On March 16, the county filed a medical neglect petition against Angelica's parents and a detention hearing was scheduled for the next day.
 
 
 8
 At the March 17 detention hearing, which Angelica attended, the juvenile court referee refused to modify Judge Kapiloff's previous transfusion order. The next day, Angelica was transfused, over her objections. On March 20, the county withdrew its request for custody; three days later, the California Court of Appeal denied habeas corpus. On April 14, the juvenile court dismissed the medical neglect petition.
 
 
 9
 On March 12, 1990, the Nieblas filed in state court a complaint seeking injunctive relief, a declaratory judgment and damages under both section 1983 and California law. On April 10, they filed an amended complaint which was served on the county two days later. The county then removed the action to federal court. After a hearing, the district court dismissed with prejudice all the federal causes of action for failure to state a claim upon which relief could be granted. It is from this dismissal that the Nieblas appeal.
 
 
 10
 "A dismissal for failure to state a claim pursuant to Fed.R.Civ.P. 12[ (b)(6) ] is a ruling on a question of law and as such is reviewed de novo." Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 100 S.Ct. 3217 (1990). Review is limited to the contents of the complaint. Love v. United States, 871 F.2d 1488, 1491 (9th Cir.1989). A complaint should not be dismissed under the rule "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." Id. (quotation omitted). All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Id. The Supreme Court reversed, holding that the district court should have abstained. The Court concluded that, where there is a pending state proceeding, "abstention is appropriate unless state law clearly bars the interposition of the constitutional claim." Id. at 425-26.
 
 II
 
 11
 The county suggests that this case calls for federal abstention under the Younger principles. See generally, Younger v. Harris, 401 U.S. 37 (1971). In general, where the government is a party to a civil suit, federal courts will abstain if proceedings exist in the state system to adjudicate adequately the constitutional claims. See Moore v. Sims, 442 U.S. 415 (1979).
 
 
 12
 In Moore, a state agency removed children from their parents, who were suspected of child abuse, pursuant to an emergency ex parte order giving the agency temporary custody. Id. at 419-20. While state proceedings were pending, a three-judge district court panel found the authorizing law unconstitutional for failure to provide adequate notice and a prompt post-deprivation hearing. Sims v. State Dept. of Public Welfare, 438 F.Supp. 1179, 1192-95 (S.D.Tex.1977) (three-judge panel), rev'd sub nom Moore v. Sims, 442 U.S. 415 (1979). The Supreme Court reversed, holding that the district court should have abstained. The Court concluded that, where there is a peniding state proceeding, "abstention is appropriate unless state law clearly bars the interposition of the constitutional claims." Id. at 425-26.
 
 
 13
 Contrary to the county's suggestion, the Court's decision in Moore did not rest on a finding that "equitable relief ... could only interfere with vindication of state interests in life or death situations." The Younger doctrine does not prevent federal courts from granting equitable relief that curtails state action. See, e.g., Wooley v. Maynard, 430 U.S. 705 (1977) (upholding injunction preventing enforcement of criminal statute in case brought by Jehovah's Witness who had previously been prosecuted for obscuring state motto on his license plate).
 
 
 14
 Here, there was no pending appeal of the juvenile court's decision at the time the district court entered its judgment. This case is the only case which challenges the validity of the transfusion orders. This case was originally filed in state court, then removed by the county to federal court on the basis of federal question jurisdiction. After dismissing the federal claims, the district court remanded the state claims to state court. There was no pending proceeding in state court before the district court remanded the state claims. Accordingly, the district court need not have invoked the abstention doctrine here.
 
 III
 
 15
 The county asserts that any claims arising from events occurring in 1986 are time-barred. The applicable statute of limitations for section 1983 actions is the residual limitations period for personal injury actions in the state where the action arose. Owens v. Okure, 488 U.S. 235, 249-50 (1989). In California, where the county sought the transfusion orders, the applicable statute of limitations is one year from the date of accrual. Cal.Civ.Proc.Code § 340(3) (West 1990); Del Percio v. Thornsley, 877 F.2d 785, 786 (9th Cir.1989). The Nieblas filed this lawsuit three and a half years after the county sought the first disputed transfusion order in 1986. Therefore, claims relating to that transfusion order are barred by the statute of limitations.
 
 IV
 
 16
 The Nieblas argue that the district court erred in dismissing their section 1983 claim. Section 1983 provides a cause of action when a person acting under color of state law deprives another of "any rights, privileges, or immunities secured by the Constitution...." 42 U.S.C. § 1983. The Nieblas argue that they were deprived of their rights by county workers acting under color of law. The county disputes this and advances a "traditional concept" under which a county would be liable only if it directs its employees to act unconstitutionally pursuant to a specific state statute. The county misperceives the appropriate standard.
 
 
 17
 The relevant "color of law" inquiry here is whether the county workers acted pursuant to an official "policy or custom." Monell v. Department of Social Serv., 436 U.S. 658, 694 (1978). According to the Supreme Court,
 
 
 18
 "official policy" often refers to formal rules or understandings--often but not always committed to writing--that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time.... [However, if] the decision to adopt [a] particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government "policy" as that term is commonly understood.
 
 
 19
 Pembaur v. Cincinnati, 475 U.S. 469, 480-81 (1986) (footnote omitted).
 
 
 20
 The Nieblas do not point to a written or formal policy; they point to the repeated efforts to obtain ex parte orders to transfuse Angelica. This is a sufficient allegation to survive a motion under Fed.R.Civ.P. 12(b)(6). See Shah v. Los Angeles, 797 F.2d 743, 747 (9th Cir.1986) ("bare allegation" that officers' actions conformed to official policy is sufficient to survive a dismissal motion). Because the Nieblas' complaint does set out a credible allegation that the county acted under color of law, it does not fail to state a claim on this basis.
 
 V
 
 21
 Angelica argues that she stated a claim under section 1983 in alleging that the county violated her constitutional right to procedural due process. The county violated this right, she maintains, by seeking the transfusion orders without giving her meaningful notice and an opportunity to be heard.
 
 
 22
 Angelica concedes that she, her parents, and their lawyer knew that social workers were going to seek the transfusion orders. This knowledge did not, Angelica asserts, rise to the level of meaningful notice because the social workers did not tell her from which judge the orders would be sought, when the requests would be made, or how she could express her views to the judge. The Nieblas did act on the notice they had. One of the actions they took was an unsuccessful attempt to arrange for a prior hearing at the hospital with the judge. Additionally, Angelica had an opportunity to be heard on her objections to transfusions at the detention hearing which was held after one order was granted but before blood was transfused.
 
 
 23
 It is well established that a government agency acting pursuant to its parens patriae power may seek a court order authorizing a forced blood transfusion in an apparent emergency.[1] Jehovah's Witnesses v. King County Hosp. Unit No. 1, 278 F.Supp. 488 (W.D.Wash.1967) (three-judge panel), aff'd, 390 U.S. 598 (1968) (one-sentence affirmance). Free exercise of religion, bodily autonomy and parental rights yield before the compelling interest the state has in protecting children from serious health problems. Id. 278 F.Supp. at 504-505; Lawrence Tribe, American Constitutional Law 1363 (2d ed. 1988) (collecting cases). See also Staeleus v. Yake, 432 F.Supp. 834, 839 (N.D.Ill.1977) (dismissing section 1983 suit alleging inadequate notice before seeking transfusion order)
 
 
 24
 Doctors told the county workers that Angelica's falling blood count presented an apparent emergency. Angelica argues that because the county social workers are lay people, they were in no position to accept this characterization of her condition. For the same reason, though, they were in no position to reject the doctors' characterization of her condition. The fact that a transfusion was not immediately required does not negate the emergency nature of her situation.
 
 
 25
 Angelica forwards arguments about the applicability of the mature minor doctrine, the strength of her religious beliefs, and the evolving rights of bodily autonomy. These arguments do not go to the county's authority to seek an expedited ex parte transfusion order. These arguments go to the merits of issuing that order. The courts are the proper institution to weigh the gravity of the situation, the strength of the child's religious convictions and the capability of the child to make a life or death decision. As the district court said to the Nieblas, "Your enemy here was the order. Your enemy was the judge."
 
 VI
 
 26
 Angelica's parents argue that they stated a claim under section 1983 in alleging that the county violated their constitutional rights. The Nieblas assert that they had a constitutionally protected liberty interest in the care of their daughter that encompassed their right to determine Angelica's medical care without "unjustified" and "unwarranted" state interference.
 
 
 27
 The substance of this argument was rejected by the Supreme Court in Prince v. Massachusetts, 321 U.S. 158 (1944). The Court stated that,
 
 
 28
 [N]either rights of religion nor rights of parenthood are beyond limitation. Acting to guard the general interest in youth's well being, the state as parens patriae may restrict the parent's control by requiring school attendance, regulating or prohibiting the child's labor and in many other ways.... The right to practice religion freely does not include the liberty to expose ... the child ... to ill health or death.
 
 
 29
 Id. at 166-67 (footnotes omitted).
 
 
 30
 One of the "many other ways" the state may restrict parents' control is by compelling their children to submit to blood transfusions despite the parents' religious objections. Jehovah's Witnesses, 390 U.S. at 598 (affirming district court panel's decision with a reference to Prince ). As discussed above, when a child faces an apparent medical emergency, due process does not require county workers to give parents official notice before seeking a court order.
 
 VII
 The judgment of the district court is
 
 31
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 Courts have ordered blood transfusions over religious objections in non-emergency situations also. See, e.g., In Re Sampson, 29 N.Y.2d 900, 278 N.E.2d 918 (1972) (authorizing blood transfusion during surgery on child's deformed face). See Kenneth J. Rampino, Annotation, Power of Court or Other Public Agency to Order Medical Treatment Over Parental Religious Objections for Child Whose Life is not Immediately Endangered, 52 A.L.R.3d 1118 (1973)