# United States Court of Appeals
# for the Fifth Circuit

———————

No. 23-50697

———————

United States Court of Appeals
Fifth Circuit

**FILED**
February 10, 2025

Lyle W. Cayce
Clerk

Jennifer Virden; William H. Clark,

*Plaintiffs—Appellants/Cross-Appellees*,

*versus*

City of Austin, Texas,

*Defendant—Appellee/Cross-Appellant*.

———————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:21-CV-271

———————————————————————

Before Jones, Smith, and Ho, *Circuit Judges*.

James C. Ho, *Circuit Judge*:

Alexis de Tocqueville once observed that "Americans make great and true sacrifices for public affairs. . . . I have observed a hundred times that they hardly ever fail to lend faithful support to each other as needed." 2 Alexis de Tocqueville, Democracy in America 893 (Eduardo Nolla ed., James T. Schleifer trans., Liberty Fund 2012) (1835).

De Tocqueville's description of American generosity and public spiritedness remains true to this day. The United States consistently ranks among the most charitable nations on earth. *See*, *e.g.*, Charities Aid

No. 23-50697

Found., CAF World Giving Index 5 (2019). In 2023, Americans donated over $550 billion to charity. Two-thirds of that amount was donated by individuals. *See* Lilly Family Sch. of Philanthropy, Indiana Univ., Giving USA 2024: The Annual Report on Philanthropy 2023 (2024). *See also, e.g.*, Thalia Beaty, *GoFundMe says $30 billion has been raised on its crowdfunding and nonprofit giving platforms*, Associated Press, Feb. 6, 2024.

People donate for all sorts of reasons—whether it's to charitable organizations or political campaigns. Some do it for sincere, altruistic reasons. Some do it for public acclaim. Some donors believe that a charitable organization or political candidate can achieve their public goals more effectively than they could by themselves. Some donate without ever even meeting the candidate. And some donate for corrupt purposes.

The Supreme Court has repeatedly confirmed that the First Amendment protects the rights of citizens to donate to political campaigns. *See, e.g.*, *Buckley v. Valeo*, 424 U.S. 1, 22 (1976); *Randall v. Sorrell*, 548 U.S. 230 (2006). Of course, the First Amendment does not protect corruption. *See, e.g.*, *United States v. Hamilton*, 62 F.4th 167, 174 (5th Cir. 2023) (Ho, J., dissenting from denial of rehearing en banc) ("The freedom of speech guaranteed to every citizen protects political advocacy—not corruption."). A number of federal and state laws criminalize corruption and warrant robust enforcement. *See, e.g.*, *id.* But under our legal system, we presume innocence—not corruption.

This case implicates two principles that our precedents have already established. First, the First Amendment protects recipients as well as donors. *See, e.g.*, *Zimmerman v. City of Austin*, 881 F.3d 378, 382 (5th Cir. 2018); *Catholic Leadership Coal. of Texas v. Reisman*, 764 F.3d 409, 423 (5th Cir. 2014). Second, any attempt to restrict donations—including the timing

2

of a donation—is subject to rigorous First Amendment scrutiny. *See Zimmerman*, 881 F.3d at 382.

After all, when it comes to elected officials regulating the manner of their own elections, the Constitution is understandably skeptical. As the Chief Justice put it, "those who govern should be the *last* people to help decide who *should* govern." *McCutcheon v. FEC*, 572 U.S. 185, 192 (2014) (plurality op.).

So when Jennifer Virden ran for city office in Austin in the 2020 and 2022 election cycles, she sought to challenge the city's ban on any and all fundraising outside the one-year period leading up to the general election.

We agree with the district court that Austin's ban on fundraising outside the one-year period is unconstitutional. We likewise agree that both Virden and William Clark, one of her donors, are entitled to nominal damages for this violation of their First Amendment rights. *See Uzuegbunam v. Preczewski*, 592 U.S. 279, 292 (2021). We accordingly reject the city's cross-appeal.

Virden herself appeals on the ground that the district court should have allowed her to supplement the summary judgment record with evidence showing her desire to contribute to another candidate for Austin office in the 2024 election cycle. But the district court did not abuse its discretion in enforcing the discovery deadline in the case.

We accordingly affirm.

## I.

Jennifer Virden is a small business owner in Austin who decided to run for city council in the 2020 election cycle. She narrowly lost that race. She then ran for mayor in the 2022 election cycle.

The city of Austin allows candidates for city office to raise funds only "during an authorized campaign period." AUSTIN, TEX. CITY CODE § 2-2-7(G). Before the authorized period, candidates can neither solicit nor receive contributions to their campaigns.

Originally, this blackout period lasted until six months before a general election. That six-month window was approved by Austin voters in 1997 as part of a series of campaign finance regulations. *See Zimmerman*, 881 F.3d at 382.

The length of the blackout period changed in 2017, after another Austin candidate challenged the six-month window as a violation of the First Amendment. This court agreed in *Zimmerman*. We held that temporal limits on campaign contributions are subject to the same rigorous First Amendment standards as dollar limits, and that the city had failed to show "how a contribution made seven months before election day presents a different threat of quid pro quo corruption than a contribution made three months before election day"—and that the six-month window was therefore unconstitutional. 881 F.3d at 391–93 (cleaned up).

While *Zimmerman* was pending, the city approved a new ordinance that extended the fundraising window from six months to one year. The new ordinance amended the city code with a new subsection, § 2-2-7(B), providing that "[t]he campaign period for a general election begins the 365th day before the date of the general election." The one-year fundraising window took effect on October 16, 2017.

Because Virden began her first campaign within one year of the 2020 general election, the blackout period did not affect her in that cycle, and she was able to fundraise for her entire campaign. But she announced her intention to run in the 2022 cycle in March 2021—twenty months before the

general election, and seven months before she could begin fundraising under the ordinance.

The same day that she announced her candidacy for the 2022 election, she filed this suit. The complaint challenged the one-year fundraising window as unconstitutional under the First Amendment and sought declaratory and injunctive relief as well as nominal damages under 42 U.S.C. § 1983.

The procedural history of this suit is admittedly complex. Shortly after filing the complaint, Virden moved for a preliminary injunction. The district court denied the request, finding that Virden had failed to show she would suffer irreparable harm. Virden filed an interlocutory appeal, which a panel of our court rejected in October 2021. *See Virden v. City of Austin*, No. 21-50597, 2021 WL 4955613 (5th Cir. Oct. 25, 2021) (per curiam) (unpublished). Before the mandate issued, the fundraising window opened. The panel subsequently vacated its opinion, dismissed Virden's appeal as moot, and remanded the case to the district court.

Back in the district court, Virden amended her complaint to add one of her campaign contributors, William Clark, as a plaintiff. Clark was prevented from donating to Virden's campaign due to the blackout period.

The district court set a revised scheduling order. The parties agreed to a deadline of December 9, 2022 for the close of discovery and February 3, 2023 for filing dispositive motions.

In the meantime, Virden lost the mayoral election.

After the close of discovery and the end of Virden's mayoral campaign, both sides moved for summary judgment. Virden and Clark argued that the one-year fundraising window was unconstitutional, and renewed their requests for prospective relief and nominal damages. The city

argued that Virden's claim was time-barred under Texas's two-year statute of limitations because it had been filed more than two years after the ordinance was adopted in 2017; that Virden lacked standing because she had no cognizable First Amendment interest in receiving campaign contributions; that the occurrence of the election in November 2022 mooted Virden and Clark's claims; and that the fundraising window was constitutional.

In May 2023, after the motions for summary judgment had been filed, Virden became aware of a candidate for the 2024 general election, Jade Lovera. Virden wished to contribute to her campaign immediately. But the blackout period for the 2024 election would not end for six more months. Accordingly, Virden and Clark asked the district court to supplement the summary judgment record with evidence regarding Virden's desire to donate to Lovera. Their explanation for the lateness of the filing was that Virden had not become aware of the campaign until earlier in the month. Notably, however, they never sought to amend the complaint to include Virden's intention to donate to Lovera.

The district court issued its summary judgment ruling in August 2023, granting in part and denying in part. The district court held that Virden's claim was not time-barred because she did not begin to consider running for office until 2020. It also held that Virden and Clark had standing to pursue their challenges because "both the contributing and contributed-to party have sufficient injuries-in-fact to challenge campaign finance restriction." *Catholic Leadership Coal.*, 764 F.3d at 423.

On the merits, the district court held that Virden and Clark's claims for declaratory and injunctive relief were moot, since the 2022 cycle had already ended, and the summary judgment record did not reflect concrete plans from either to seek office or contribute in the future. But the district

6

court did award Virden and Clark nominal damages, noting that the one-year fundraising window was unconstitutional for "essentially the same reasons" that the six-month window was held unconstitutional in *Zimmerman*. Because Virden and Clark suffered "a completed violation of a legal right," they were entitled to nominal damages. *Uzuegbunam*, 592 U.S. at 292.

Finally, the district court refused to consider Virden and Clark's evidence concerning Lovera's 2024 campaign, holding that the submission of the evidence was untimely.

Both sides then pursued this appeal. In February 2024, while this appeal was pending, the city eliminated the blackout period altogether. As a result, Virden and Clark concede that their claims for prospective relief are now moot.

The issues presented in this appeal are: (1) whether the suit is untimely; (2) whether Plaintiffs have standing; (3) whether the one-year fundraising limit is unconstitutional, warranting an award of nominal damages; and (4) whether the district court was right to refuse to consider evidence regarding Virden's desire to contribute to Lovera's campaign in the 2024 cycle.

## II.

We review summary judgment rulings *de novo*, applying the same standards used by the district court. *See Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 781 (5th Cir. 2024). Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A party is entitled to judgment as a matter of law when "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When reviewing cross-motions for summary judgment,

"each movant bears the burden of establishing that no genuine [dispute] of material fact exists and that it is entitled to judgment as a matter of law." *Nat'l Press Photographers Ass'n*, 90 F.4th at 781 (cleaned up). We review jurisdictional issues, including standing, *de novo. See id.* And we review a district court's denial of a motion to amend or supplement pretrial materials for abuse of discretion. *See Shepherd on behalf of Estate of Shepherd v. City of Shreveport*, 920 F.3d 278, 283 (5th Cir. 2019).

## III.

We begin with the city's appeal. The city argues that Virden's suit was time-barred, that she lacked standing, and that the one-year fundraising window was constitutional. We reject each argument.

## A.

First, we address timeliness. Virden's suit was brought under 42 U.S.C. § 1983 and filed in Texas, so she had to file within two years of her cause of action accruing. *See Brown v. Pouncy*, 93 F.4th 331, 334 (5th Cir. 2024) ("[T]he statute of limitations for a Section 1983 action is a [forum] state's general or residual personal injury statute of limitations.") (citing *Owens v. Okure*, 488 U.S. 235, 236 (1989)); Tex. Civ. & Rem. Code § 16.003 (setting a limitations period of two years for personal injuries). The district court held that Virden's suit was timely because she began contemplating a run for office in 2020 and filed suit in 2021.

The city contends that Virden's cause of action accrued in October 2017, when the one-year fundraising window was adopted. The city claims that our decision in *Peter Henderson Oil Co. v. City of Port Arthur, Tex.*, 806 F.2d 1273 (5th Cir. 1987), supports its theory. There, oil and gas drilling companies challenged a local ordinance requiring neighbors' consent before drilling. We found that the companies' cause of action accrued when the ordinance was adopted, because they were given "explicit, unambiguous

notice" that "the property would be subject to the requirement of consent" at the time of adoption. The companies had waited to sue until after the limitations period had run, so their suit was time-barred. *Id.* at 1275.

But Virden's cause of action could not have accrued in 2017. A limitations period does not begin until a "plaintiff either is or should be aware of . . . [an] injury." *Longoria v. City of Bay City, Tex.*, 779 F.2d 1136, 1138 (5th Cir. 1986). Virden could not have been injured by Austin's blackout period in 2017, because she was not considering running for office or contributing to a campaign at that time. In *Peter Henderson Oil*, by contrast, the plaintiffs were engaged in regulated conduct at the time the ordinance took effect. *See* 806 F.2d at 1275.

Virden's cause of action against the city accrued no earlier than 2020. Her suit was accordingly timely.

**B.**

Next, the city challenges Virden's standing. It argues that Virden did not suffer an injury-in-fact from the blackout period because she was a political candidate rather than a campaign donor. According to the city, donors have an associational right to make campaign contributions, but candidates have no right to solicit and receive them.

This argument conflicts with governing precedent. "[B]oth the contributing and the contributed-to party have sufficient injuries-in-fact to challenge campaign finance restrictions." *Catholic Leadership Coal.*, 764 F.3d at 423.

The city points out that *Catholic Leadership Coalition* involved a political action committee, and not a candidate. But it would be a curious theory of standing that would regard the First Amendment as protecting

9

corporate entities but not people. Nothing in *Catholic Leadership Coalition* or any other precedent remotely supports that view.

The city also argues that Virden did not suffer a completed injury because the ordinance was never enforced against her. But "in the speech context, we 'may *assume* a substantial threat of future enforcement absent compelling contrary evidence.'" *Nat'l Press Photographers Ass'n*, 90 F.4th at 782 (quoting *Barilla v. City of Houston,* 13 F.4th 427, 433 (5th Cir. 2021)). "[A] chilling of speech because of the mere existence of an allegedly vague or overbroad statute can be sufficient injury to support standing." *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 660 (5th Cir. 2006).

In addition, it's undisputed that Clark had standing. *See McCutcheon*, 572 U.S. at 203 ("When an individual contributes money to a candidate, he exercises both" the rights of "political expression and political association."); *see also Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006) ("the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement").

## C.

Finally, the city defends the one-year fundraising window on the merits. But we agree with the district court that the one-year window was unconstitutional for "essentially the same reasons" that the six-month fundraising window was unconstitutional in *Zimmerman.*

Under *Zimmerman*, the city must show "(1) that the . . . [time] limit serves the sufficiently important interest of preventing actual corruption or its appearance and (2) that it employs means that are closely drawn." 881 F.3d at 391. The government must produce "some evidence of actual corruption or its appearance," *id.* at 392, and show how contributions made right before a blackout period ends "present[] a different threat of *quid pro*

*quo* corruption" than contributions made after a fundraising window opens. *Id.* at 391.

The city fails to make the required showing. It offers only the testimony of political consultant David Butts. He testified that the one-year window was important because the public might forget older contributions, including those from "controversial" sources. He also testified that banning older contributions diminishes the risks of bundling—a practice in which fundraisers collect a number of contributions from others.

This is even weaker evidence than that presented in *Zimmerman*. *Id.* at 392. Nowhere does the city explain how older contributions create a greater danger of corruption or its appearance. Nor does the city make any attempt to show how a contribution made thirteen months before election day presents a greater threat of corruption than one made eleven months before election day.

Accordingly, we affirm the award of nominal damages to Virden and Clark for the violation of their First Amendment rights during Virden's mayoral campaign.

## IV.

We now turn to Virden's appeal. The district court denied Virden's request to supplement the record with evidence that she intended to donate to Lovera's campaign, months after the discovery deadline had expired. Virden maintains that she was unaware of Lovera's campaign until after the discovery deadline had passed. We conclude that the district court acted within its broad discretion to refuse to consider evidence submitted after the discovery deadline. *See, e.g.*, *Shreveport*, 920 F.3d at 287–88 (affirming denial of motion to supplement); *Rollins v. Fort Bend ISD*, 89 F.3d 1205, 1222–23 (5th Cir. 1996) (same).

No. 23-50697

* * *

We affirm.